Debra L. HIZER, Plaintiff,

v.

GENERAL MOTORS CORPORATION, ALLISON GAS TURBINE DIVISION, Metropolitan Life Insurance Company, and Allison Engine Company, Inc., Defendants.

No. IP 94–0082–C.

United States District Court, S.D. Indiana, Indianapolis Division.

June 1, 1995.

Richard N. Bell, Cohen & Malad, P.C., Indianapolis, IN, Charles C. Engel, Brownsburg, IN, for plaintiff.

Reginald B. Bishop, Roberts & Bishop, Indianapolis, IN, for defendant.

## ENTRY ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

HAMILTON, District Judge.

This case presents several questions concerning interest payable on benefits subject to the federal Employee Retirement Income Security Act (ERISA). Plaintiff Debra L. Hizer claims that defendants have failed to pay her all the interest required by Indiana statute on the proceeds of a life insurance

policy that her late husband purchased. Because of a dispute over whether Mr. Hizer's insurance application took effect before his death, the $100,000 benefit was not paid until nearly five years after he died. Mr. Hizer bought the policy pursuant to an employee benefit plan sponsored by defendant General Motors Corporation, so defendants contend that the Indiana statute on which plaintiff bases her claim for additional interest is preempted by ERISA. Plaintiff has filed a motion for partial summary judgment as to the interest rate calculation on the insurance benefits. She has also requested attorneys fees pursuant to ERISA. Defendants have filed a cross-motion for summary judgment.

The court concludes that ERISA preempts the Indiana statute that would otherwise govern plaintiff's right to interest for the delayed payment of life insurance benefits. The court further holds that plaintiff is entitled under ERISA to interest for the delayed payment of benefits, and that the proper measure of interest, under applicable Seventh Circuit authority, is the prevailing market rate or prime rate of interest during the period that payment was delayed. The court grants summary judgment for plaintiff and will award her attorneys fees under ERISA.

### Undisputed Facts

Debra L. Hizer is the widow of Virgil L. Hizer. Mr. Hizer worked for Allison Gas Turbine, a division of the General Motors Corporation (collectively "GM").[1] Mr. Hizer was a participant in the General Motors Life and Disability Benefits Program, an approved employee welfare benefit plan governed by ERISA. One benefit under that plan was a Basic Group Life Insurance policy administered by defendant Metropolitan Life Insurance Company ("MetLife").

In April 1988, Mr. Hizer received a MetLife brochure stating he was eligible for Optional Group Life Insurance coverage to supplement the basic coverage he already had. The brochure instructed employees to complete an election form and return it to MetLife to receive the optional coverage.

1. Defendant Allison Engine Company, which recently purchased the Allison Gas Turbine Division from General Motors, was dismissed from this action on March 10, 1995, by stipulation of the parties.

Mr. Hizer executed the election form opting $100,000 of coverage and delivered it to either his foreman or the GM insurance department on July 29, 1988. He later received the contract of insurance.

Mr. Hizer died suddenly on August 24, 1988. Mrs. Hizer filed a claim for the proceeds of the optional coverage on September 19, 1988. MetLife denied the claim, stating that because it had not received the election form until August 2, 1988, coverage did not commence until September 1, 1988 (i.e., the first month after the month in which the election form was received). Mrs. Hizer filed suit against the defendants in state court claiming entitlement to the insurance proceeds. Defendant MetLife removed the action to federal court in *Hizer v. General Motors Corp.*, No. IP 91–123–C (S.D.Ind.). Defendants filed a motion for summary judgment, based on plaintiff's failure to exhaust administrative review procedures. The parties then agreed to stay the action while Mrs. Hizer submitted her claim to MetLife for further administrative review. In that review, concluded on April 27, 1993, MetLife found that Mr. Hizer may have submitted his enrollment form to his foreman before the August 1, 1988, deadline required for the coverage to be in effect at his death. MetLife therefore decided to honor Mrs. Hizer's claim.

On May 19, 1993, MetLife tendered a check to Mrs. Hizer in the amount of $111,999.74, which included $100,000 in benefits under the policy plus interest. Although Mr. Hizer had died nearly five years earlier, MetLife calculated the interest as six percent per annum multiplied by the amount of the proceeds for a period of only two years, or $11,999.74. Mrs. Hizer, not satisfied with the interest calculation, filed a motion for summary judgment requesting a greater

amount of interest based on Ind.Code § 24–4.6–1–103, which provides for interest at the rate of eight percent from the date of settlement on money due on most written instruments not specifying a rate of interest.[2] Judge Tinder dismissed the action on the ground that Mrs. Hizer's only remaining claim, for additional interest under ERISA, was premature because she had not exhausted her administrative remedies.[3] Judge Tinder did not rule on Mrs. Hizer's motion because the summary judgment for the defendants had mooted the issue. That decision on summary judgment is final and has not been appealed.

After further administrative review of Mrs. Hizer's claim for additional interest, MetLife rejected the claim. Mrs. Hizer filed the present action on January 25, 1994, seeking an award of interest on the insurance proceeds at the rate of eight percent, again relying on Ind.Code § 24–4.6–1–103. Mrs. Hizer seeks to invoke this court's federal question jurisdiction under ERISA, 29 U.S.C. § 1132(e). She also seeks attorneys fees.

The plan documents applicable to this life insurance policy are silent as to the payment of interest on benefits claimed and awarded. Defendants say, however, it is "customary" for them to pay delayed settlement interest on GM benefits in accordance with the General Motors claims manual. The claims manual says that six percent interest will be paid from the insured's death, but "generally" for no more than two years. Mrs. Hizer does not dispute that point as a factual matter, but bases her claim on Ind.Code § 24–4.6–1–103, which requires payment of interest on money due pursuant to a written instrument. She argues that the state statute requires the interest to be paid at an annual rate of eight

---

**2.** Interest at the rate of eight percent (8%) per annum shall be allowed:

(a) From the date of settlement on money due on any instrument in writing which does not specify a rate of interest and which is not covered by IC 1971, 24–4.5 or this article;
(b) And from the date an itemized bill shall have been rendered and payment demanded on an account stated, account closed or for money had and received for the use of another and retained without his consent.

Ind.Code § 24–4.6–1–103.

**3.** Judge Tinder held that the plan rules required further administrative review of the claim because Mrs. Hizer was disputing the sufficiency of a benefit award. Mrs. Hizer had filed another claim for review with MetLife based on her claim of insufficient interest. However, because MetLife had not yet completed review of her claim at the time of Judge Tinder's ruling, Judge Tinder dismissed the action.

percent where the instrument is silent as to interest, and that the statute applies to defendants. Thus, Mrs. Hizer claims she is entitled to the difference between the interest defendants actually paid her on May 19, 1993, and the interest that would have accrued by that time had it been calculated at eight percent, plus interest since May 19, 1993, on that difference.

### Summary Judgment Standard

Summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *E.g., Glass v. Dachel,* 2 F.3d 733, 740 (7th Cir.1993). The fact that the parties have filed cross-motions for summary judgment does not affect the applicable standard; the district court should deny both motions if there is a genuine issue of material fact. *E.g., Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir. 1993). In this case, however, the material facts relevant to the parties' motions are not in dispute.

### The Merits

The parties' motions raise several questions about the relationship between ERISA and state law concerning interest payable on monetary obligations, and the scope of federal question jurisdiction under ERISA. The questions are significant in cases like this one, where substantial plan benefits are not paid until long after payment was due. As discussed below, the court concludes first that it has subject matter jurisdiction over this case because ERISA preempts the Indiana statute that would otherwise control the interest due on delayed payment of benefits under an ERISA plan. Next, the court recognizes under the common law of ERISA a right to payment of interest on delayed payments of benefits. Third, the court holds that, under controlling Seventh Circuit reasoning, interest for delayed payment of

ERISA benefits should be calculated using market interest rates, such as the prime rate. Fourth, the court finds that plaintiff should be entitled to a market rate of interest in this case beginning thirty days after she submitted her original claim. Finally, the court determines that Mrs. Hizer should be awarded attorneys fees under ERISA.

■ *Subject Matter Jurisdiction and Preemption:* This court must first consider whether plaintiff's claim for additional interest arises under federal law. If it does not, the case must be dismissed for lack of subject matter jurisdiction. Plaintiff's claim must be that she is seeking an ERISA benefit—otherwise, the court has no jurisdiction. However, she contends that the measure of that benefit is controlled by an Indiana statute. She further contends that ERISA does not preempt the state statute. *See* 29 U.S.C. § 1144(a) (ERISA preempts "any and all State laws insofar as they ... relate to an employee benefit plan ..."). The jurisdictional question is how plaintiff's claim for benefits based on an Indiana statute can arise under federal law. The answer is that her claim necessarily arises under federal law, and that the state statute is preempted.

■ Mrs. Hizer relies on *Estate of Pierson by Ewbank v. Pierson,* 738 F.Supp. 1230 (S.D.Ind.1990). In *Pierson,* Judge Dillin found that Ind.Code § 24–4.6–1–103 governed the interest rate to be applied to proceeds of a life insurance policy administered under the GM Employee Benefit Plan, and that the correct rate under the statute was eight percent. In so holding, Judge Dillin found that ERISA did not preempt the Indiana statute regulating interest payable on money judgments because it had only a "remote and peripheral" relation to the employee benefit plan. 738 F.Supp. at 1231.[4]

As in this case, the only question before the court in *Pierson* (at the time of that

---

4. Hizer argues that *Pierson* collaterally estops defendants from litigating the question of her entitlement to interest under the Indiana statute because it was a final judgment on nearly identical facts involving the same defendants present in this action. The Supreme Court in *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 330–31, 99 S.Ct. 645, 651–52, 58 L.Ed.2d 552 (1979), cautioned that courts should use care in exercising their discretion to apply offensive collateral estoppel, and should be vigilant about possible unfairness that might result to the party to be estopped. Because collateral estoppel would incorrectly undermine the court's subject matter jurisdiction, and because preemption law and the common law of ERISA have continued to develop since *Pierson,* collateral estoppel is not appropriate here.

court's decision) was the plaintiff's claim for interest. In *Pierson,* the underlying benefit question was resolved by settlement. Here it was resolved by Mrs. Hizer's (apparent) acceptance of payment of the principal and part of the interest she claims. In neither case did a court enter a judgment for the underlying benefit. However, there is one important difference between the two cases. Prior to the partial settlement in *Pierson,* the plaintiff's entitlement to the underlying benefit had been before the court. That claim, plainly governed by ERISA, gave the *Pierson* court subject matter jurisdiction over the action independent of its decision on the interest issue. In this case, however, plaintiff's only claim is her claim for interest. Her claim for the underlying benefit was part of her first action, which Judge Tinder dismissed, but it has never been part of this action. Even if ERISA does not preempt a claim for interest based on the Indiana statute, as *Pierson* holds, Mrs. Hizer cannot logically assert both that this court has subject matter jurisdiction and that the Indiana law is *not* preempted. This court has subject matter jurisdiction to render a decision on the merits of her claim for interest if, and only if, the Indiana statute is preempted as applied to her claim.

■ ERISA has a wide preemptive scope. Any state law that "relates to" an employee benefit plan is preempted by ERISA. 29 U.S.C. § 1144(a). The Supreme Court recently described this text as "expansive," yet "unhelpful" in determining which state laws are preempted. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* —— U.S. ——, ——, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995). A law is said to "relate to" an employee benefit plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). ERISA may preempt a state law even if the state law is not specifically designed to affect such plans or if the effect is only indirect. *District of Columbia v. Greater Washington Board of Trade,* —— U.S. ——, ——, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992). In *New York State Conference,* the Supreme Court instructed that, in determining wheth-

er a state law "relates to" an ERISA plan, courts should look to the objectives of ERISA, and especially to ERISA's goal of minimizing the administrative and financial burden of having plans be concerned with multiple legal systems in their administration. —— U.S. at ——, 115 S.Ct. at 1677 (citing *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142, 111 S.Ct. 478, 484–85, 112 L.Ed.2d 474 (1990)). "The basic thrust of the pre-emption clause, then, was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *New York State Conference,* —— U.S. at —— – ——, 115 S.Ct. at 1677–78. However, ERISA, as *Pierson* holds, does not preempt state laws, such as those of general application, that have only a " 'tenuous, remote, or peripheral' connection with covered plans." *Greater Washington Board of Trade,* —— U.S. at —— n. 1, 113 S.Ct. at 583 n. 1 (quoting *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21).

■ Under these standards, Ind.Code § 24–4.6–1–103 "relates to" covered plans and is preempted as applied here. True, it is a law with general application to a wide variety of obligations to pay money. However, this court does not believe that such a general statute governing interest payable when benefit payments are delayed is properly described as having only "tenuous, remote, or peripheral connection" with covered plans. What employee benefit plans do is pay money. That is their principal function. Given the time value of money, a material term of any obligation to pay money is the time the payment must be made. That material term is meaningless if there are no legal sanctions for failure to make payment on time. As applied to employee benefit plans, those sanctions are exactly the subject covered by Ind.Code § 24–4.6–1–103.

ERISA's focus on uniformity in administration also supports preemption here. Payment of interest on benefits is obviously a significant issue for the administration of an employee benefit plan. If interest payments are governed by state law, the result is a lack of uniformity in administration and payment of benefits.

Also weighing in favor of preemption here is the fact that state laws on the subject of interest could interfere so easily with federal law and policy. Of course, ERISA preemption is not limited to state laws that are deemed inconsistent with federal law and policy, but to illustrate the importance of the preemption issue, suppose that the Indiana statute provided for an annual interest rate of one percent, or twenty percent. As applied to employee benefit plans, one percent interest would obviously be below fair compensation for the time value of money, and (at least under recent market conditions) twenty percent would be so far above fair compensation as to be punitive. The incentives and distortions created by rates too high or too low support the conclusion that the Indiana statute here is sufficiently connected to employee benefit plans to be preempted as applied to plans' obligations to pay benefits.

■■■ Preemption is further supported by the well-established principle that suits brought by beneficiaries or participants asserting "improper processing of claims under ERISA-regulated plans be treated as federal questions...." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987). A claim for erroneous delay in payment is surely a claim for "improper processing" of a claim and therefore should be governed by federal law. *See Kanne v. Connecticut General Life Ins. Co.,* 859 F.2d 96, 100 (9th Cir.1988) (ERISA preempted state statute allowing claim for delay in processing payment of insurance proceeds). *See also Aetna Life Ins. Co. v. Borges,* 869 F.2d 142, 146 (2d Cir.1989) (finding "that laws that have been ruled preempted [include] those ... [that] interfere with the calculation of benefits owed to an employee"). In short, ERISA preempts laws that affect "the primary administrative functions of benefit plans." *Id.* Section 24–4.6–1–103 of the Indiana Code is such a law.

If Mrs. Hizer's claim were brought "pursuant to" the Indiana statute itself, the claim would be preempted by ERISA, in which case Mrs. Hizer could amend her complaint to state a claim under the common law of ERISA. But if ERISA did not preempt her claim under the Indiana statute, this court would be forced to dismiss her complaint for lack of subject matter jurisdiction. *See UIU Severance Pay Trust Fund v. Local Union No. 18–U, United Steelworkers of America,* 998 F.2d 509, 510 n. 2 (7th Cir.1993). However, because Mrs. Hizer's claim for interest arises under an ERISA-governed plan, her claim should be viewed as one brought under the federal common law of ERISA, such that this court has subject matter jurisdiction over it. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 64–66, 107 S.Ct. 1542, 1546–1548, 95 L.Ed.2d 55 (1987) (state law claim may be recharacterized as ERISA claim for purposes of removal to federal court).

■■■ *ERISA Provides a Right to Interest for Delayed Payment of Benefits:* The fact that this court has subject matter jurisdiction does not mean Mrs. Hizer has stated a claim under ERISA. ERISA may preempt state law without providing a comparable remedy. *E.g., Thomason v. Aetna Life Ins. Co.,* 9 F.3d 645, 647 (7th Cir.1993). The issue here is whether ERISA allows a beneficiary of a life insurance policy maintained as part of an employee benefit plan to bring an independent action for interest on the proceeds of that policy where the beneficiary has already been paid the proceeds. The statutory provisions of ERISA are silent as to the payment of interest for delay in payment of employee benefits. The question is therefore whether the federal common law of ERISA supports such a claim.[5] Case law is scant. The parties have cited only one district court decision in which this issue was decided under ERISA. *See Scott v. Central States, Southeast and Southwest Areas Pension Plan,* 727 F.Supp. 1095, 1098 (E.D.Mich. 1989). As discussed below, however, this court disagrees with *Scott* on this issue because its reasoning is inconsistent with Sev-

---

5. The courts are to develop and apply a federal common law of contracts to govern rights and obligations under employee benefit plans subject to ERISA. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557–58, 95 L.Ed.2d 39 (1987); *Thomason v. Aetna Life Ins. Co.,* 9 F.3d 645, 647 (7th Cir.1993).

enth Circuit decisions governing the closely related matter of prejudgment interest.

 In the absence of a federal statute or persuasive precedent on a claim for interest for delayed payment, the law of prejudgment interest on ERISA claims provides helpful guidance on this issue. The Seventh Circuit holds that prejudgment interest is presumptively available in cases where judgment has been rendered pursuant to federal law. *Gorenstein Enterprises, Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989). ERISA is no exception to this rule. *Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692, 696 (7th Cir.1991). Thus, in lawsuits to obtain ERISA benefits, a prevailing plaintiff is presumptively entitled to interest for a plan administrator's wrongful denial of benefits. *Lorenzen v. Employees Retirement Plan of the Sperry and Hutchinson Co., Inc.*, 896 F.2d 228, 236 (7th Cir.1990) (prejudgment interest necessary under ERISA to compensate victims of wrongdoing); *Ziaee v. Vest*, 916 F.2d 1204, 1208 (7th Cir.1990) ("[p]rejudgment interest compensates the prevailing party for the loss of use of money during the time between the wrong and the conclusion of the litigation"). Wrongdoing may also occur where there is an unreasonable delay in the administrative claims process.[6]

Defendants argue vigorously that ERISA should not recognize a right to interest on delayed payment of benefits. They note that ERISA's statutory language says nothing explicit about such interest, and they rely on the broad principle that "extracontractual" remedies are not available in claims for ERISA benefits. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. at 52, 54, 107 S.Ct. at 1555, 1556. Because the benefit plan at issue here does not provide for interest, defendants argue, plaintiff here is seeking "extracontractual" benefits not available under ERISA. In support of this position, defendants cite *Scott v. Central States, Southeast and Southwest Areas Pension Plan*, where the plaintiff sought interest on 12 years' worth of late pension payments. The district court held the interest would be "extracontractual" and therefore was not available. 727 F.Supp. at 1098.

 In recent years, however, the Seventh Circuit, among others, has established the presumption that prejudgment interest should ordinarily be awarded in cases seeking payment of ERISA benefits. An award of interest for delayed payment of benefits is no more "extracontractual" than an award of prejudgment interest. In both cases, the interest is an essential element of complete relief for breach of an obligation to pay benefits. *See generally Restatement (Second) of Contracts* § 354 and cmt. c (1979) (unless otherwise agreed, interest is always recoverable for the non-payment of money once payment has become due and there is a breach). Defendants offer no rationale for drawing a distinction between prejudgment interest and interest on delayed payments, and none is apparent. This court therefore disagrees with *Scott* on this question of interest.

The same considerations that require payment of prejudgment interest in ERISA cases also weigh in favor of a right to interest on erroneously delayed payments. From a participant's or beneficiary's viewpoint, the principal duty of the benefit plan is to pay benefits. If payments are not timely paid, they will not serve their purpose. Without a right to interest for erroneously delayed payments, participants and beneficiaries will not receive the full benefits they are entitled to receive. Moreover, the absence of a right to interest would create an incentive for benefit plans to delay payments and to retain for the plan the interest earned on the money that should have been paid to the participant or beneficiary.

---

**6.** Under the regulations governing ERISA, the plan administrator must process the initial claim within a "reasonable" time from the date the claim is made. 29 C.F.R. § 2560.503–1(e)(1). If the claim is denied and review is requested, the decision on review must ordinarily occur within 60 days to be reasonable. 29 C.F.R. § 2560.503– 1(h). However, where the employee benefit plan is established and maintained pursuant to a collective bargaining agreement, as GM's plan is here, the agreement controls the reasonableness of claim and review procedures through grievance and arbitration mechanisms. 29 C.F.R. § 2560.503–1(a)(2).

When a benefit has been erroneously denied or delayed, there is no reason why the legal entitlement to interest should depend on whether the claimant has actually won a judgment or even filed suit. Under the common law, when a party breaches a contractual payment obligation, interest is ordinarily required from the date payment was actually due. *See Restatement (Second) of Contracts* §§ 354 and cmt. c (1979); *Moffett v. Gene B. Glick Co., Inc.*, 621 F.Supp. 244, 286 (N.D.Ind.1985) (wages and benefits); *Wilson v. Montgomery Ward & Co., Inc.*, 610 F.Supp. 1035, 1041 (N.D.Ind.1985) (bonus payment to employee). This entitlement to interest is not "extracontractual." It is instead an essential part of a complete contractual remedy. Under the common law, the breaching party cannot erase the plaintiff's right to past interest by merely paying the principal late, even if the late payment is made before judgment is entered. Under ERISA, there is no reason to draw a distinction between prejudgment interest and interest on delayed payment.

This court therefore holds that a claimant for payment of benefits under an ERISA plan is entitled under ERISA to payment of interest for erroneous delay in payment of the benefits. This result is in accord with the principle that interest for delay in payment of a benefit is compensatory in nature. Plans should not be unjustly enriched any more where there is no judgment on entitlement to the underlying benefit than where there is such a judgment. *See Rivera*, 921 F.2d at 697 (prejudgment interest not only compensatory, but prevents unjust enrichment); *Lorenzen*, 896 F.2d at 236–37 (same).

*Calculation of Interest Rate Under ERISA:* Having found that a beneficiary may state a claim under ERISA for delayed payment interest, the question is how to calculate a plan administrator's interest obligation. The plan documents in this case are silent on the issue. Defendants argue that if this court decides Mrs. Hizer is entitled to interest, then it should be limited to that interest they already paid her. MetLife paid Mrs. Hizer two years of interest at six percent, stating that this was the "customary" award in claims of this kind. Defendants introduce an affidavit of a MetLife Claims Supervisor from the record of the *Pierson* case to support their asserted custom. Defendants also point to the GM claims manual, which states that death benefits should include interest paid *from the date of death,* but "generally not ... for periods in excess of two years...." Defendants do not argue, however, that MetLife's custom and GM's claims manual were part of the benefit plan. Therefore, the payment terms of the custom and claims manual are not controlling here.

As discussed above with regard to jurisdiction, plaintiff argues that Ind.Code § 24–4.6–1–103 governs the interest calculation, but that statute is preempted by ERISA in its application here. To the extent that *Estate of Pierson by Ewbank v. Pierson* is inconsistent with that proposition, this court disagrees, especially in view of more recent case law giving broad reach to ERISA's preemption clause at least with respect to state laws that affect so directly the payment of benefits and that may interfere with the uniform administration of plans. *See, e.g., Franklin H. Williams Ins. Trust v. Travelers Ins. Co.*, 50 F.3d 144 (2d Cir.1995) (New York statute requiring interest to be paid on life insurance proceeds from date of death "related to" employee benefit plan and would have been preempted had it not also fallen under ERISA savings clause for insurance laws). *See generally New York State Conference,* — U.S. at ——, 115 S.Ct. at 1678; *Ingersoll–Rand,* 498 U.S. at 142, 111 S.Ct. at 484–85.

Just as case law dealing with prejudgment interest provided guidance as to whether interest on delayed payments is available at all, it also provides guidance in calculating that interest. Awarding prejudgment interest is not simply a matter of statutory application, unlike postjudgment interest under federal law. *See Student Loan Marketing Ass'n v. Lipman,* 45 F.3d 173, 176 (7th Cir.1995) (recognizing difference between claim for prejudgment interest and "automatic" award of postjudgment interest to prevailing civil litigants in federal court); 28 U.S.C. § 1961(a) (postjudgment interest measured by current treasury bill rates). Neither ERISA itself nor any other federal

statute specifies a rate or methodology for calculating prejudgment interest. *Gorenstein*, 874 F.2d at 436. The decision whether to award prejudgment interest in a case arising under a federal statute is governed by federal common law. *Rivera*, 921 F.2d at 696; *Lorenzen*, 896 F.2d at 236; *Gorenstein*, 874 F.2d at 436 (collecting cases).

Plaintiff argues that even if the Indiana statute is preempted, this court should "borrow" the statutory rate because federal law does not specify a rate to be used in calculating prejudgment interest. Several courts have taken that approach under ERISA and other federal laws. *See Biava v. Insurers Administrative Corp.*, 48 F.3d 1231 (Table), 1995 WL 94461, *5 (10th Cir.1995) (ERISA); *Colon Velez v. Puerto Rico Marine Management, Inc.*, 957 F.2d 933, 941 (1st Cir.1992) (Labor Management Relations Act); *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 983–84 (5th Cir.1991) (ERISA); *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1219 (8th Cir.1981) (ERISA).

The Seventh Circuit has followed a different course. While it has stated that district courts should have some discretion in determining the rate of prejudgment interest, *Gorenstein*, 874 F.2d at 437, the Seventh Circuit has also held that the appropriate rate is the market rate. *In the Matter of Oil Spill by the Amoco Cadiz Off the Coast of France on March 16, 1978*, 954 F.2d 1279, 1332 (7th Cir.1992). A simple (and acceptable) approximation of the market rate is the prime rate at various relevant periods during the litigation. *Id.* Other, more complex (and more precise) ways of calculating the market rate are appropriate as well. *Gorenstein*, 874 F.2d at 436–37; *Amoco Cadiz*, 954 F.2d at 1332–33.

■ Use of the prime rate fits the rationale for awarding prejudgment interest in the first place. Prejudgment interest is "an element of complete compensation." *Amoco*

*Cadiz*, 954 F.2d at 1331 (quoting *West Virginia v. United States*, 479 U.S. 305, 310, 107 S.Ct. 702, 706, 93 L.Ed.2d 639 (1987)). The presumption that prejudgment interest should be available for violations of federal law is based in part on the "growing recognition of the time value of money...." *Rivera*, 921 F.2d at 696. Therefore, a static method, like a fixed nominal interest rate in a statute, does not well serve the federal policy of compensating a prevailing party accurately. *Amoco Cadiz* points out that flexibility is important because even reliance on market rates will produce inaccurate results if not adjusted over time to reflect market changes. 954 F.2d at 1332. The substantial fluctuations in market interest rates since Mr. Hizer died emphasize the point. The market rate approach also serves the goal of national uniformity in plan administration, unlike the approach that borrows several states' laws on interest rates.

■ The Seventh Circuit appears not to have addressed specifically the reasoning of the line of cases that look to state law to determine the rate of prejudgment interest to be applied under federal common law, but those cases contradict the principles the Seventh Circuit follows. Where a rate fixed by statute results in underpayment, the policy of providing adequate compensation to ERISA claimants is undermined. *See, e.g., Amoco Cadiz*, 954 F.2d at 1331 (prejudgment interest is compensatory and puts parties in same position they would have been in had the compensation been paid promptly). Where the statutory rate results in an overpayment, prejudgment interest becomes punitive, since a benefit plan will be forced to pay more than it might reasonably have earned through investment while it held the benefit. Prejudgment interest is not designed to be punitive. *See, e.g., Drennan v. General Motors Corp.*, 977 F.2d 246, 253 (6th Cir.1992).[7]

---

7. The logic of the cases that look to state law for the calculation of prejudgment interest may be flawed for another reason. The line of cases cited above can ultimately be traced to *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208 (8th Cir.1981), which held that because 28 U.S.C. § 1961(a) instructed federal courts to look to state law in calculating postjudgment interest, it

was thus appropriate to look to state law for calculation of prejudgment interest. A year after *Dependahl*, however, § 1961(a) was amended to base postjudgment interest on "the coupon issue yield equivalent ... of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment." Thus, the

■ Prejudgment interest under ERISA is a matter of federal law. The Seventh Circuit's rationale for calculating prejudgment interest precludes reliance on state statutes that fix a rate of interest that cannot adjust to different financial market conditions. Seventh Circuit law requires instead calculation by reference to the prime rate or some other measure of market interest rates during relevant time periods. This court can see no reason why the Seventh Circuit's principles for calculating prejudgment interest based on market rates do not apply with equal force to interest for delay in payment.[8]

■ *Plaintiff is Entitled to Interest from October 19, 1988:* Plaintiff is entitled to interest at market rates for the long-delayed payment of the insurance proceeds. It remains to be determined when that interest began to accrue. Several choices are available. They include the date of the insured's death, the date plaintiff submitted her initial claim for benefits, a reasonable time (say 30 or 60 days) after she submitted that claim, the day the insurer initially denied the claim, the date plaintiff submitted her request for review of the denial, a reasonable time after that date, or the date plaintiff exhausted her administrative review. There are arguments and legal authority available to support each of these possibilities.

■ The central governing principle here is that interest—whether prejudgment or interest on delayed payment—begins to run from the time payment is due under the governing contract. *Restatement (Second) of Contracts* §§ 354 and cmt. c (1979) (interest recoverable from time for performance);

*Moffett,* 621 F.Supp. at 286; *Wilson,* 610 F.Supp. at 1041.

The contract of insurance does not state explicitly when payment shall be due after the insured dies. Plaintiff's Exhibit C at 11, 15. The parties have not called to the court's attention any uniform or general rule of common law for interpreting the life insurance contract on this issue. As a practical matter, however, one cannot reasonably expect payment on a life insurance policy until a reasonable period after the insurer receives an initial claim giving notice of the death of the insured. In the absence of clearer language in the contract, this court will award plaintiff interest from October 19, 1988, which was one month after she gave defendants notice of her claim. *See generally Connecticut General Life Ins. Co. of New York v. Cole,* 821 F.Supp. 193, 203 (S.D.N.Y.1993) (awarding prejudgment interest under ERISA one month after insurer received notice of claim).

It may be helpful to explain briefly why both parties' positions on this issue have been rejected. Defendants argue that if any interest is awarded, it should begin to accrue no earlier than April 27, 1993, when plaintiff finally completed her partially successful trip through their administrative review procedures. As defendants point out, plaintiff's claim for interest was not ripe for adjudication in court before that time. However, she was legally *entitled* to payment under the contract of insurance long before then. The general rule, as noted, is that interest runs from the time the payment should have been made under the contract. In addition, defendants' approach would merely reward insurers who stretch out the review procedures to unreasonable lengths.

amended § 1961(a) has nothing to do with state law, a fact that some courts following *Dependahl* have not recognized. *Cf. Kann v. Keystone Resources, Inc.,* 575 F.Supp. 1084, 1095–96 (W.D.Pa.1983) (following *Dependahl* insofar as it suggests that prejudgment interest is matter of federal common law, but noting that amendment of § 1961(a) necessarily changes *Dependahl*'s suggestion that federal courts should look to state law for calculation).

8. Although not presented here, this analysis raises a practical question that could be important to many plans: May benefit plans enforce plan provisions that establish the interest rate or a meth-

od of calculation for delay in payment of benefits? Generally, participants and beneficiaries of ERISA plans will have no ability to bargain over plan terms. It would defeat the policies of ERISA, for example, to allow a plan sponsor to imbed in a plan an artificially low interest rate for delay in payment of benefits. However, the law usually favors a contractual solution over a judicial one. As long as plans adopt a reasonable way to calculate the interest, *i.e.,* one that comports with the Seventh Circuit's methodology in prejudgment interest cases, then it appears the plan terms should control the precise details of the calculation.

In arguing against plaintiff's claim for interest, defendants seem to think an interest award would punish them. They have argued strenuously that the original delay was plaintiff's fault because she failed to give them information sooner to show exactly when and how her husband had submitted his application for the insurance and because she failed to invoke the proper procedures for administrative review of the initial denial. The record shows that after Mr. Hizer died, information about his insurance application was in the defendants' hands, not the plaintiff's. However, the debate over the reasons for defendants' long delay in payment does not matter for purposes of the interest calculation. The Seventh Circuit has made clear that interest for delayed payment of ERISA benefits is not punishment. It is merely an essential element of complete compensation to account for the time value of money. *Rivera,* 921 F.2d at 696; *Lorenzen,* 896 F.2d at 236. While the court may have equitable power to deny interest or delay its accrual, there is no reason to exercise that discretion in this case. Defendants are being ordered to pay to Mrs. Hizer money that they were never entitled to—their returns earned on money they should have paid to her years earlier.

Plaintiff's argument for interest from the date of her husband's death is stronger. Upon his death, her right to the principal payment came into legal existence. In addition, defendants' claims manual says that their customary practice is to pay interest from the date of the insured's death. The problem is that the manual is not part of the governing plan documents, nor is there any indication that the insured would have received a copy of the manual, let alone relied on it. *Cf. Ryan v. Chromalloy American Corp.,* 877 F.2d 598, 603 (7th Cir.1989) (where official plan documents are ambiguous, extrinsic evidence may be considered to determine parties' intent); *Etherington v. Bankers Life & Cas. Co.,* 747 F.Supp. 1269, 1276–77 (N.D.Ill.1990) (same), *aff'd mem.,* 968 F.2d 1218, 1992 WL 167953 (7th Cir. 1992). Also, the same claims manual provides for the six percent rate and the two year limit that plaintiff is suing to avoid. *Cf. Atlin v. Security–Connecticut Life Ins. Co.,*

788 F.2d 139, 141–42 (3d Cir.1986) (awarding prejudgment interest on life insurance benefits from time insurer received proof of insured's death). In the absence of more specific guidance from the insurance policy or case law, this court chooses to follow the general common law rule of calculating interest from the time the payment should have been made, which would be a reasonable time after plaintiff notified defendants of her claim. Therefore, Mrs. Hizer is entitled to interest at the relevant prime rates on a principal amount of $100,000 from October 19, 1988 (one month after she sent her letter to MetLife, to account for a reasonable processing period), to May 19, 1993, and on any balance due from the May 19, 1993, payment to the date of final judgment · in this case, which will be entered today.

The Seventh Circuit has instructed that in awarding prejudgment interest, courts should apply the prime interest rate and should compound the interest. *Amoco Cadiz,* 954 F.2d at 1290, 1332–37. Here, the interest has been compounded annually. The interest period began on October 19, 1988, and ends on the date of this entry, June 1, 1995. A partial distribution made by defendants on May 19, 1993, offsets all of the original principal owed (*i.e.,* the life insurance benefit itself) and some interest. The court invited submission of data from the parties, and plaintiffs submitted an affidavit with the periodic prime rate established by Bank One Indianapolis, NA. In the absence of objection by defendants, the court has relied on that data.

Based on the calculation set out in the appendix to this entry, the court finds that defendants owe Mrs. Hizer $40,551.84 in delayed payment interest. This includes all interest accrued up to the date of this opinion.

 *Attorneys Fees:* Mrs. Hizer has also requested an award of attorneys fees. Under ERISA, the court has discretion to award attorneys fees to a prevailing plaintiff. 29 U.S.C. § 1132(g). The Seventh Circuit has instructed district courts to apply a five-factor test in deciding whether to award fees to plaintiffs who prevail under ERISA. *Ja-*

nowski v. *International Brotherhood of Teamsters Local 710,* 673 F.2d 931, 940 (7th Cir.1982), *vacated on other grounds,* 463 U.S. 1222, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983). The five factors are:

> (1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions.

*Janowski,* 673 F.2d at 940. Although the *Janowski* factors were developed for cases involving pension plans (where a prevailing beneficiary's fees may be awarded at the direct expense of other plan beneficiaries), the Seventh Circuit has also applied those factors where a plaintiff prevails on a claim under a welfare benefit plan. *Anderson v. Flexel, Inc.,* 47 F.3d 243, 250–51 (7th Cir. 1995); *Rivera,* 921 F.2d at 698.

The first factor does not weigh in favor of a fee award here, for there is no indication of bad faith on the part of the defendants. There is no evidence that Met-Life acted in bad faith when it denied Mrs. Hizer's claim initially, and it ultimately agreed to process her claim again, awarding her the benefit she sought and some interest. The defendants disputed the amount of interest owed, and their position, although deemed incorrect by this court, was not in bad faith.

The remaining factors under *Janowski* all weigh in favor of a fee award. The second factor weighs in favor of a fee award, for the defendants should be able to afford the fee award here. The third factor weighs in favor of a fee award, for there is a deterrent value to allowing fees where a plan administrator does not provide all the interest necessary to make the beneficiary whole. One reason for awarding prejudgment and delayed payment interest in ERISA cases is to place an incentive on plans to compensate participants and beneficiaries fully. An award of attorneys fees in such a case also gives an incentive to plan administrators to at least attempt to make participants and beneficiaries whole. Here, MetLife awarded a sum of interest arbitrarily, without regard to the actual period of accrual for which Mrs. Hizer deserved to be made whole. The defendant's resistance over years of litigation has imposed costs on Mrs. Hizer that appear to exceed the interest actually in dispute. *See Brewer v. Protexall, Inc.,* 50 F.3d 453, 459 (7th Cir. 1995) (affirming fee award of six times the cost of original claim).

The fourth *Janowski* factor is focused on pension plans, but Mrs. Hizer's suit should benefit other beneficiaries, and will not come at their expense. In many cases where an individual seeks a benefit under an employee welfare benefit plan, the stakes are too small to make litigation economically rational without the prospect of a fee award. That is even more likely to be true where the participant or beneficiary seeks only interest on late payment of a benefit. Here, Mrs. Hizer's suit and the resulting development of the federal common law of ERISA should aid other participants and beneficiaries of this plan and other employer-sponsored welfare benefit plans to determine their rights to interest on plan benefits. Thus, the fourth factor also weighs heavily in favor of a fee award. The fifth *Janowski* factor also weighs in favor of a fee award. Defendants should have known that prejudgment interest is presumptively available in ERISA cases to provide complete remedies, and they have stubbornly resisted Mrs. Hizer's claims at almost every step for more than five years. While the court does not find that defendants have acted in bad faith, they also have offered no argument to support their conclusion that interest on delayed payments should be treated differently from prejudgment interest. On balance, therefore, after considering each of these factors, this court believes it should exercise its discretion to allow a fee award here.

## CONCLUSION

Plaintiff's motion for partial summary judgment is granted and defendants' motion for summary judgment is denied in all respects. The court will enter final judgment in favor of Mrs. Hizer in the amount of

$40,551.84, and will award attorneys fees when the parties complete their submission of evidence on the appropriate amount.

So ordered.

## Appendix

| Beginning Date | Ending Date | Interest Period | Interest Rate | Periodic Interest | Accum. Interest | Compounded Principal |
|---|---|---|---|---|---|---|
| 10/19/88 | 11/27/88 | 40 days | 10.00% | $1,095.89 | $ 1,095.89 | $100,000.00 |
| 11/28/88 | 2/9/89 | 74 days | 10.50 | 2,128.76 | 3,224.65 | 100,000.00 |
| 2/10/89 | 2/23/89 | 14 days | 11.00 | 421.92 | 3,646.57 | 100,000.00 |
| 2/24/89 | 6/4/89 | 101 days | 11.50 | 3,182.19 | 6,828.76 | 100,000.00 |
| 6/5/89 | 7/30/89 | 56 days | 11.00 | 1,687.67 | 8,516.43 | 100,000.00 |
| 7/31/89 | 10/18/89 | 80 days | 10.50 | 2,301.37 | 10,817.80 | 100,000.00 |
| 10/19/89 | 1/7/90 | 81 days | 10.50 | 2,582.21 | 13,400.01 | 110,817.80 |
| 1/8/90 | 10/18/90 | 284 days | 10.00 | 8,622.54 | 22,022.55 | 110,817.80 |
| 10/19/90 | 1/191 | 75 days | 10.00 | 2,507.31 | 24,529.86 | 122,022.55 |
| 1/2/91 | 9/15/91 | 257 days | 9.50 | 8,162.14 | 32,692.00 | 122,022.55 |
| 9/16/91 | 10/18/91 | 33 days | 8.00 | 882.57 | 33,574.57 | 122,022.55 |
| 10/19/91 | 11/5/91 | 18 days | 8.00 | 526.98 | 34,101.55 | 133,574.57 |
| 11/6/91 | 12/22/91 | 47 days | 7.50 | 1,290.00 | 35,591.55 | 133,574.57 |
| 12/23/91 | 7/1/92 | 191 days | 6.50 | 4,543.37 | 39,934.92 | 133,574.57 |
| 7/2/92 | 10/18/92 | 109 days | 6.00 | 2,393.36 | 42,328.28 | 133,574.57 |
| 10/19/92 | 5/19/93 | 213 days | 6.00 | 4,983.44 | 47,311.72 | 142,328.28 |
| 5/20/93 | 10/18/93 | 152 days | 6.00 | 757.80 | 36,069.78 | 30,328.54[9] |
| 10/19/93 | 3/22/94 | 155 days | 6.00 | 919.40 | 36,988.82 | 36,069.78 |
| 3/23/94 | 4/18/94 | 27 days | 6.25 | 166.76 | 37,155.58 | 36,069.78 |
| 4/19/94 | 5/16/94 | 28 days | 6.75 | 186.77 | 37,342.35 | 36,069.78 |
| 5/17/94 | 8/16/94 | 92 days | 7.25 | 659.14 | 38,001.49 | 36,069.78 |
| 8/17/94 | 10/18/94 | 63 days | 7.75 | 482.50 | 38,483.99 | 36,069.78 |
| 10/19/94 | 11/14/94 | 27 days | 7.75 | 220.62 | 38,704.61 | 38,483.99 |
| 11/15/94 | 1/31/95 | 78 days | 8.50 | 699.04 | 39,403.65 | 38,483.99 |
| 2/1/95 | 6/1/95 | 121 days | 9.00 | 1,148.19 | 40,551.84 | 38,483.99 |

---

**9.** On May 19, 1993, defendants distributed $111,-999.74 to Mrs. Hizer, $11,999.74 of which was for interest.