Isaac **FORD**, et al., Plaintiffs–Appellants,

v.

**UNIROYAL PENSION PLAN,**
Defendant–Appellee.

No. 94–2080.

United States Court of Appeals,
Sixth Circuit.

Argued June 15, 1998.

Decided Sept. 4, 1998.

---

Doyle G. O'Connor (argued and briefed), Steinberg, O'Connor & Burns, Detroit, MI, for Plaintiffs–Appellants.

Donald H. Scharg (argued and briefed), Thomas A. Pinch (briefed), The Fishman Group, Bloomfield Hills, MI, for Defendant–Appellee.

Before: WELLFORD, MOORE, and CLAY, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

We consider in this appeal whether the federal courts must incorporate state law as the federal rule of decision with respect to the calculation of prejudgment interest and attorney fees awarded to prevailing plaintiffs in a civil enforcement action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. The plaintiffs argue that the district court erred when it rejected their request that the court calculate prejudgment interest and reasonable attorney fees in accordance with Michigan law. Because prejudgment interest and attorney fee awards are not issues primarily of state concern, and because application of Michigan law in this case would frustrate ERISA's remedial scheme, we hold that the district court was not required to look to state law. Accordingly, we affirm the district court's calculation of the prejudgment interest and attorney fees awarded in this matter.

## I. FACTS AND PROCEDURAL HISTORY

The long and tortuous history of this case began in 1984, when the plaintiffs filed suit under ERISA against the defendant, Uniroyal Pension Plan, Board of Benefits and Awards ("Uniroyal"), for disability retirement benefits owed them under the Uniroyal Retirement Plan (the "Plan").[1] The plaintiffs were employees at the now-defunct Uniroyal Tire Plant in Detroit, which was closed in July of 1981. After the plant's closing, the plaintiffs applied for disability pension benefits under the Plan. Uniroyal denied their applications, and this litigation ensued. In 1990, the district court granted summary judgment in favor of the plaintiffs on their claim for disability benefits under the Plan. J.A. at 88–104 (Dist. Ct. Order 5/29/90); 105–07 (Dist. Ct. Order 8/20/90). The district court also granted the plaintiffs' request for attorney fees under ERISA, 29 U.S.C. § 1132(g)(1), as well as their request for prejudgment interest, after determining that the defendant had engaged in a pattern of

bad faith, "as evidenced by (1) the imposition of sanctions upon the Defendant for having misled [the district court] and the arbitrator, (2) wasting the time of the Plaintiffs and the arbitrator by objecting to arbitration after stipulating to it before this Court, and (3) denying the Plaintiff's [sic] applications for pensions because of 'arbitrary and capricious' reasons when there was no medical dispute that they were entitled to disability benefits." J.A. at 106–07 (Dist. Ct. Order 8/20/90). Although the district court had previously sanctioned the defendant, it declined to levy additional Rule 11 sanctions against the defendant after concluding that additional sanctions were unwarranted. *See id.* The Sixth Circuit affirmed the district court's order on appeal, including the decision to award attorney fees and prejudgment interest. *See Kennedy v. Uniroyal Pension Plan,* Nos. 90–1705/1983/2048/2110, 937 F.2d 608 (Table), 1997 WL 134613 (6th Cir.1991).

After the Sixth Circuit affirmed the order granting the plaintiffs' motion for summary judgment, attorney fees, and prejudgment interest, the district court commenced proceedings in order to calculate the amount of prejudgment interest and attorney fees to which the plaintiffs were entitled. ERISA does not prescribe the applicable prejudgment interest rate or the method by which the district courts should calculate reasonable attorney fees. The district court rejected the plaintiffs' invitation to look to state law for the applicable prejudgment interest rate and the calculation of attorney fees. Relying on the recommendations of the magistrate judge, the district court awarded the plaintiffs reasonable attorney fees plus postjudgment interest. The district court adopted the defendant's calculation of the prejudgment interest on the benefits wrongly withheld from the plaintiffs, which utilized a 9% annual interest rate. Declining to award the plaintiffs their future monthly benefits in a lump sum, the district court instead directed Uniroyal to continue payment of monthly pensions as they became due in accordance with the Plan. The district court also declined to award the plaintiffs prejudgment interest on the present value of future benefits. J.A.

---

1. Plaintiffs Kennedy, Ford, and Aiken filed suit against the Board on September 4, 1984. Plain-
tiff Burrell was added as a plaintiff in January 1985.

at 67–68 (Am. Supp. Post–J. Order at 3–4). This appeal ensued.

## II. ANALYSIS

On appeal, the plaintiffs challenge the district court's calculations of prejudgment interest and reasonable attorney fees. Specifically, the plaintiffs assert that because ERISA is silent with respect to prejudgment interest awards and the method by which the federal courts should calculate attorney fees, the federal courts must look to state law in determining the applicable prejudgment interest rate and the method by which to calculate reasonable attorney fees. We disagree, and hold that the district court was not required to incorporate state law as the federal rule of decision on these matters.

### A. Prejudgment Interest

Although ERISA does not mandate the award of prejudgment interest to prevailing plan participants, we have long recognized that the district court may do so at its discretion in accordance with general equitable principles.[2] *See Wells v. United States Steel, Carnegie Pension Fund,* 76 F.3d 731, 737 (6th Cir.1996); *Tiemeyer v. Community Mut. Ins. Co.,* 8 F.3d 1094, 1102 (6th Cir. 1993), *cert. denied,* 511 U.S. 1005, 114 S.Ct. 1371, 128 L.Ed.2d 48 (1994). In calculating the prejudgment interest, the district court declined the plaintiff's invitation to utilize the 12% prejudgment interest rate mandated under Michigan law, MICH. COMP. LAWS ANN. § 600.6013 (West 1987 & Supp.1998), but instead adopted a 9% rate at the recommendation of the magistrate judge, who arrived at that rate by looking to the average interest rate of 52–week United States Treasury bills for the relevant period. On appeal, we must determine whether the district court abused its discretion in utilizing the 9% prejudgment interest rate rather than the state prejudgment interest rate of 12%.

Although any common law rule necessary to effectuate a federal statutory right is inherently federal in character, "[i]t does not follow ... that the content of such a rule must be wholly the product of a federal court's own devising." *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 97–98, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991). Rather, when a federal statute is silent on a particular matter, the federal courts often incorporate state law as the federal rule of decision. *See id.* at 98, 111 S.Ct. 1711; *Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage Easement,* 962 F.2d 1192, 1195–96 (6th Cir.), *cert. denied,* 506 U.S. 1022, 113 S.Ct. 659, 121 L.Ed.2d 585 (1992). However, the federal courts may properly devise a uniform federal common law when "the scheme in question evidences a distinct need for nationwide legal standards, or when express provisions in analogous statutory schemes embody congressional policy choices readily applicable to the matter at hand, ... [or when] application of [the particular] state law [in question] would frustrate specific objectives of the federal programs." *Kamen,* 500 U.S. at 98, 111 S.Ct. 1711 (citations and quotations omitted). "Thus, normally, when courts decide to fashion rules of federal common law, 'the guiding principle is that a significant conflict between some federal policy or interest and the use of state law ... must first be specifically shown.'" *Atherton v. FDIC,* 519 U.S. 213, ——, 117 S.Ct. 666, 670, 136 L.Ed.2d 656 (1997) (quoting *Wallis v. Pan Am. Petroleum Corp.,* 384 U.S. 63, 68, 86 S.Ct. 1301, 16 L.Ed.2d 369 (1966)) (alteration in original).

Our review of Supreme Court precedent suggests a strong inclination to adopt state law as the federal rule of decision when the federal statute is silent on a matter traditionally of state concern. This inclination, grounded in federalism, reflects the principle that the federal courts may not intrude into the traditional domains of the states absent authorization from Congress. *See* Thomas

**2.** By federal statute, courts allow postjudgment interest on all money judgments. 28 U.S.C. § 1961 provides that postjudgment interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.

W. Merrill, *The Common Law Powers of Federal Courts*, 52 U. Chi. L.Rev. 1, 15–18 (1985); *cf. Atherton*, 117 S.Ct. at 670 ("Whether latent federal power should be exercised to displace state law is primarily a decision for Congress, not the federal courts." (quotation omitted)). For example, in *De Sylva v. Ballentine*, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956), the Court was faced with determining whether an illegitimate child was included within the term "children" as used in the Copyright Act, 17 U.S.C. § 24. The Court looked to "the ready-made body of state law" to define the term "children" after recognizing that there does not exist a federal law of domestic relations and that domestic relations is "primarily a matter of state concern." *Id.* at 580, 76 S.Ct. 974. Similarly, the *Kamen* Court looked to state law to determine the allocation of governing power in corporations because corporations "are creatures of state law," and parties expect that corporate relationships will be governed by state-law standards. *See Kamen*, 500 U.S. at 98–99, 111 S.Ct. 1711; *see also Atherton*, 117 S.Ct. at 670 (standard of care under Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1821, governing officers and directors of federally insured savings institutions must be defined by state law because state law traditionally governs corporate standards); *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 83–85, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994) (refusing to create a special federal rule under FIRREA of imputation of knowledge of corporate officers because adopting a special federal common-law would divest states of authority over the entire law of imputation); *Columbia Gas Transmission*, 962 F.2d at 1198 (adopting state law as the federal standard for determining compensation under the eminent domain provision of the Natural Gas Act, 15 U.S.C. § 717f(h), because "property rights have traditionally been ... defined in substantial part by state law"). In contrast to areas such as domestic relations, corporations, and property rights, the calculation of prejudgment interest is not an area "primarily of state concern" for which there does not exist a substantial body of federal law. We therefore are not faced with a situation where the development of a federal common law rule governing the award of prejudgment interest divests the states of authority over a matter which they traditionally have regulated.

■ Even assuming that the calculation of prejudgment interest involves an area primarily of state concern, incorporation of state standards in the calculation of prejudgment interest could frustrate ERISA's remedial scheme. Plaintiffs ostensibly brought their original ERISA causes of action under 29 U.S.C § 1132(a)(1)(B),[3] which is one of "six carefully integrated civil enforcement provisions found in [§ 1132(a) ]," *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), which collectively "provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Id.* The Supreme Court, followed by the courts of appeals, has severely limited any possibility of a plaintiff recovering punitive damages under § 1132(a). First, in *Russell*, the Court held that § 1109, as incorporated into a civil action under § 1132(a)(2), does not authorize a beneficiary to collect punitive damages from a fiduciary. *Id.* at 138, 105 S.Ct. 3085. Second, in *Mertens v. Hewitt Associates*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), the Court disallowed both punitive and compensatory damages under § 1132(a)(3). In the two cases, the Court interpreted the language "such other equitable or remedial relief as

---

**3.** Plaintiffs do not specify in their complaint on which subsection of § 1132 they based their claims. Each plaintiff in the amended complaint appears to request relief under § 1132(a)(1)(B), which permits civil actions by an employee "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan...." The district judge later awarded attorney fees and prejudg-

ment interest as a matter of discretion. J.A. at 100, 106–07 (Dist. Ct. Orders 5/29/90 & 8/20/90). In their complaint, plaintiffs also requested damages in excess of $10,000 per plaintiff for emotional distress. The district court dismissed the plaintiffs' emotional distress claims, J.A. at 101 (Dist. Ct. Order 5/29/90); therefore this court need not determine under which provision of § 1132 plaintiffs originally purported to support their claim for emotional distress.

the court may deem appropriate" and "other appropriate equitable relief," respectively. 29 U.S.C. §§ 1109(a), 1132(a)(3). This court has interpreted the Supreme Court's language in *Russell* as "treat[ing] the statutory scheme of ERISA as one which does not intend to provide for punitive damages." *See Varhola v. Doe*, 820 F.2d 809, 817 (6th Cir. 1987). Although neither the Supreme Court nor this court has specifically held that § 1132(a)(1)(B) does not allow for punitive damages, such a conclusion is unmistakable from the language of the statute itself. Section 1132(a)(1)(B) authorizes recovery of "benefits due ... under the ... plan...." Nothing in § 1132(a)(1)(B) would permit a beneficiary to seek punitive damages. In addition, other courts of appeals have held specifically that § 1132(a)(1)(B) does not authorize punitive damages. *See Godfrey v. BellSouth Telecommunications, Inc.*, 89 F.3d 755, 761 (11th Cir.1996); *Medina v. Anthem Life Ins. Co.*, 983 F.2d 29, 31–33 (5th Cir. 1993).[4] Awards of prejudgment interest pursuant to § 1132(a)(1)(B), however, are not punitive, but simply compensate a beneficiary for the lost interest value of money wrongly withheld from him or her. *See Tiemeyer*, 8 F.3d at 1102; *see also Kinek v. Paramount Communications, Inc.*, 22 F.3d 503, 514 (2d Cir.1994) ("[A]wards of prejudgment interest must not result in over-compensation of the plaintiff." (quotation omitted)); *cf. Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 286 (2d Cir.1992) ("Prejudgment interest is not intended to penalize the trustee but serves as compensation for the use of money withheld. Hence, such an award must be made with an eye toward putting the plan in the position it would have occupied but for the breach." (citation omitted)).

■ Although prejudgment interest is typically not punitive, an excessive prejudgment interest rate would overcompensate an ERISA plaintiff, thereby transforming the award of prejudgment interest from a compensatory damage award to a punitive one in contravention of ERISA's remedial goal of simply placing the plaintiff in the position he or she would have occupied but for the defendant's wrongdoing. *See Hizer v. General Motors Corp., Allison Gas Turbine Div.*, 888 F.Supp. 1453, 1463 (S.D.Ind.1995). Similarly, an exceedingly low prejudgment interest rate fails to make the plaintiff whole by inadequately compensating him or her for the lost use of money. *See id.* Consequently, utilization of a state interest rate that is either excessive or inadequate frustrates ERISA's remedial scheme. The plaintiffs ask the court to adopt Michigan's 12% prejudgment interest rate, MICH. COMP. LAWS ANN. § 600.6013, a rate which the magistrate judge correctly concluded exceeded the average 52–week United States Treasury bill rate for the applicable time period. J.A. at 161–62 (Magis. J.'s R & R). Moreover, the Michigan legislature prescribed a high prejudgment interest rate not only to ensure that the plaintiff is fully compensated for the delay in receiving money damages, but also "to compensate the prevailing party for litigation expenses." *Gordon Sel–Way, Inc. v. Spence Bros., Inc.*, 438 Mich. 488, 475 N.W.2d 704, 716 (1991). Because the district court has separately provided for attorney fees and costs pursuant to 29 U.S.C. § 1132(g)(1), application of Michigan's statutory prejudgment interest rate would over-

---

4. One can interpret the Supreme Court's dicta in *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 145, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), a state-law preemption case, to imply that punitive damages are available under § 1132(a). The Court stated that "there is no basis in [§ 1132(a)]'s language for limiting ERISA actions to those which seek 'pension benefits.' It is clear that the relief requested here is well within the power of federal courts to provide." The relief requested by the employee was punitive and compensatory damages. This court agrees with Judge Wisdom's explanation of this dicta:

We do not interpret these statements to mean that the remedies which the plaintiff in *Inger-*

*soll–Rand* was seeking—future lost wages, mental anguish and punitive damages—are necessarily available under ERISA § 502(a). The Supreme Court was stating that federal law provides relief for ERISA actions other than those that seek to recover pension benefits, such as the plaintiff's cause of action for wrongful termination. The Supreme Court is not holding that the specific *remedies* this plaintiff had sought under state law are necessarily the remedies that will be afforded him should he be granted *relief* under ERISA § 502.

*McRae v. Seafarers' Welfare Plan*, 920 F.2d 819, 821 n. 7 (11th Cir.1991).

compensate the plaintiffs by awarding them double compensation for their litigation expenses. We therefore conclude that application of the 12% prejudgment interest rate prescribed by Michigan law conflicts with federal policy under ERISA, which prohibits recovery of punitive damages under 29 U.S.C. § 1132(a)(1)(B). Accordingly, the district court did not abuse its discretion when it refused to utilize the prejudgment interest rate prescribed under Michigan law and instead applied a rate based on the average 52–week United States Treasury bill rate for the applicable period.[5]

■■■ Because we conclude that the federal courts need not incorporate state law as the federal common law rule for the applicable prejudgment interest rate, we reaffirm our earlier decisions leaving the determination of the prejudgment interest rate within the sound discretion of the district court. *See, e.g., EEOC v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 579 (6th Cir.1984). A district court's calculation of prejudgment interest is reviewed on appeal for an abuse of discretion. *See id.* Although

a district court may look to state law for guidance in determining the appropriate prejudgment interest rate, *see Cottrill v. Sparrow, Johnson, & Ursillo, Inc.*, 100 F.3d 220, 224–25 (1st Cir.1996); *Smith v. American Int'l Life Assurance Co. of N.Y.*, 50 F.3d 956, 958–59 (11th Cir.1995), we have held previously that the statutory postjudgment framework set forth in 28 U.S.C. § 1961 is a reasonable method for calculating prejudgment interest awards. *See Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d at 579. The magistrate judge determined that the average 52–week U.S. Treasury bill rate over the relevant period was 8.68%. J.A. at 165–66 (Magis. J. R & R). He then selected the flat rate of 9% per annum, "to avoid the complexities of compounding interest." J.A. at 166 (Magis. J. R & R). The district court adopted the recommended 9% annual rate. J.A. at 235 (9/28/93 Dist. Ct. Order Accepting Magis. J.'s R & R). Because the 9% rate was based on the average 52–week United States Treasury bill rate over the relevant time period, we conclude that the district court did not abuse its discretion in utilizing a 9% prejudgment interest rate.[6]

**5.** None of the cases relied upon by the plaintiffs supports their position that the federal courts must adopt the prejudgment interest rate prescribed by state law. In *Smith v. American International Life Assurance Co. of New York*, 50 F.3d 956 (11th Cir.1995), the Eleventh Circuit simply held that a district court does not abuse its discretion when it resorts to state law in determining the prejudgment interest rate; the Eleventh Circuit did not mandate that the district court look to state law. *See id.* at 958–59. Similarly, the district court in *Jansen v. Greyhound Corp.*, 692 F.Supp. 1029 (N.D.Iowa 1987), did not state that it was required to apply the prejudgment interest rate set forth under state law, but simply "looked to state law to supply an easily applied pre-judgment rate of interest." *Id.* at 1044 n. 2. Nor does the line of Eighth Circuit cases stemming from *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208 (8th Cir.), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981), support the plaintiffs' position. In *Dependahl*, the Eighth Circuit concluded that because 28 U.S.C. § 1961, which governs the award of postjudgment interest, "provides useful guidance" with respect to calculating prejudgment interest, the district courts should follow the method prescribed in § 1961 for the calculation of prejudgment interest. *See id.* at 1219. At the time of the *Dependahl* decision, § 1961 directed the courts to adopt the postjudgment interest rate provided under state law. *See* 28 U.S.C. § 1961 (1976). Therefore the result in

*Dependahl* was to follow state law regarding the applicable rate of interest. The resultant holding in *Dependahl* directing the district courts to look to state law in determining the proper prejudgment interest rate is no longer good law. A year after the *Dependahl* decision, Congress amended § 1961 to require the federal courts to look to the interest rate on 52–week United States Treasury bills in calculating the applicable postjudgment interest rate. In recognition of this statutory change, the Eighth Circuit recently held that 28 U.S.C. § 1961, as amended, "provides the proper measure for determining rates of both prejudgment and postjudgment interest." *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1331 (8th Cir.1995). Consequently, the plaintiffs are left with no case law in support of their position.

**6.** After the plaintiffs concurred in Uniroyal's calculation of the prejudgment interest award, J.A. at 271–73 (Pl.'s Supplemental Br. Concurring in the Use of Def.'s Calculation of Interest), the district court adopted the defendant's calculation. J.A. at 66 (Am. Supplemental Post–Judgment Order 12/4/94). The defendant's calculations are purportedly "based upon 9% annual simple interest, compounded annually," J.A. at 258 (Def.'s Calculation of Interest). Because plaintiffs' challenge to the prejudgment interest award, both below and on appeal, focused on the *rate* of prejudgment interest utilized by the district court, we conclude the plaintiffs waived any

■ Relying on MICH. COMP. LAWS ANN. § 600.6013, the plaintiffs also assert that the district court erred in not awarding prejudgment interest on the present value of future benefits due the plaintiffs under the Plan. As explained previously, prejudgment interest awards under ERISA serve as compensation to a plaintiff for the lost use of money wrongly withheld; such awards may not penalize the defendant. *See Tiemeyer*, 8 F.3d at 1102; *Diduck*, 974 F.2d at 286. The awarding of interest on the present value of future benefits would overcompensate the plaintiffs and penalize Uniroyal in violation of ERISA's purely compensatory remedial scheme. We award interest on past benefits wrongfully withheld by a defendant in order to compensate the ERISA plaintiff for the lost use of the benefits. When a plaintiff is not yet entitled to the benefit, however, there is no lost opportunity to use or invest the benefit payment. Consequently, awarding interest on future benefits is not necessary to make the plaintiff whole and would only overcompensate the plaintiff. Application of Michigan law to award prejudgment interest on future benefits thus would frustrate ERISA's remedial scheme. Accordingly, we hold that the district court did not err in refusing to award prejudgment interest on future benefits due the plaintiffs under the defendant's pension plan.

## B. Attorney Fees

■ We review the award of attorney fees under ERISA for an abuse of discretion. *See Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Race-*way, 46 F.3d 1392, 1400 (6th Cir.1995). ERISA expressly authorizes the court in its discretion to award a party reasonable attorney fees. 29 U.S.C. § 1132(g)(1).[7] ERISA does not, however, set forth the methodology by which a district court should calculate the attorney fee award. The plaintiffs argue that the federal courts must fill this gap by incorporating state law as the federal rule of decision, and that the district court erred when it refused to apply Michigan law, which the plaintiffs interpret as permitting the court to "stack" attorney fees by calculating each plaintiff's attorney fee award as though each had retained separate counsel rather than joint counsel.[8] We disagree and hold that the plaintiffs are entitled only to their reasonable attorney fees, which should reflect the fact that the plaintiffs obtained joint representation.

■ "The presumption that state law should be incorporated into federal common law is particularly strong in areas in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards." *Kamen*, 500 U.S. at 98, 111 S.Ct. 1711. As we explained previously, this expectation is particularly strong in an area "which is primarily a matter of state concern." *De Sylva*, 351 U.S. at 580, 76 S.Ct. 974. We see no reason to believe application of federal common law to the determination of attorney fee awards would upset the parties' commercial expectations because attorney fee awards traditionally have not been under the exclusive domain of the states.[9]

objections they may have raised to the formula used by the defendant and the district court in calculating the prejudgment interest award.

7. 29 U.S.C. § 1132(g)(1) provides that "[i]n any action under [29 U.S.C. § 1132] ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

8. The plaintiffs do not contend that the district court abused its discretion with respect to its determination of a reasonable hourly fee or its calculation of the reasonable amount of hours necessary to perform the legal services rendered by the plaintiffs' attorneys.

9. The plaintiffs argue that because the parties entered into a contractual employment relation-ship that at the time was governed by state law, they reasonably expected that Michigan law would govern their rights and obligations. *See* Pls.-appellants' Br. at 15. In focusing on the parties' contractual employment relationship, the plaintiffs frame the issue too broadly. Although ERISA generally governs employees' and employers' rights and obligations with respect to retirement benefit plans, this does not mean that every issue that arises under ERISA automatically concerns the parties' employment relationship. *Cf. De Sylva v. Ballentine*, 351 U.S. at 580, 76 S.Ct. 974 (dispute over meaning of the term "children" as used in Copyright Act involved law of domestic relations even though suit was brought under federal statute governing right to renew a copyright). The present appeal concerns the plaintiffs' right to attorney fees and

Rather, there exists a substantial body of federal law on the matter, including Supreme Court precedent. *See; e.g., Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (endorsing lodestar approach to determination of reasonable attorney fees); *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (holding that reasonable fees in federal civil rights action are to be calculated according to prevailing market rates in relevant community). Moreover, any presumption favoring incorporation of Michigan law on attorney fees as the federal rule of decision, as interpreted by the plaintiffs, cannot stand because "stacking" attorney fees in the manner advocated by the plaintiffs conflicts with ERISA's remedial scheme. The district court correctly recognized that stacking attorney fees would result in a "windfall recovery" for the plaintiff by compensating the plaintiffs for legal fees never incurred by them. J.A. at 201–202 (Dist. Ct. Order 9/28/93). Consequently, stacking attorney fees would frustrate ERISA's remedial scheme by converting the award of attorney fees from purely compensatory damages to punitive damages. *Cf. Rivera v. Benefit Trust Life Ins. Co.,* 921 F.2d 692, 697 (7th Cir.1991) ("[T]he provision for attorneys' fees under ERISA is not in the nature of a punitive damage award, but rather is analogous to an assessment of costs."). Because Michigan law, as interpreted by the plaintiffs, conflicts with federal policy under ERISA, the district court's refusal to stack attorney fees was entirely proper.

Finally, none of the Michigan cases relied upon by the plaintiffs supports stacking attorney fees in the manner advocated by the plaintiffs. Michigan precedent permits the recovery of attorney fees under more than one statutory provision or rule in order that the purpose of each statute or rule may be realized. *See, e.g., Howard v. Canteen Corp.,* 192 Mich.App. 427, 481 N.W.2d 718, 726 (1991) (awarding attorney fees under court rule governing mediation sanctions and under Michigan's Civil Rights Act); *Kondratek v. Auto Club Ins. Ass'n,* 163 Mich.App. 634, 414 N.W.2d 903 (1987) (stating that in appropriate cases court could award attorney fees

under both Michigan's no-fault act and court mediation rule). The plaintiffs have not pointed to any Michigan decision permitting the "stacking" of attorney fees by calculating each plaintiff's attorney fee award as though each had retained separate counsel rather than joint counsel. Because in the instant case, the district court awarded the plaintiffs attorney fees pursuant to one statute only—ERISA—the stacking cases relied upon by the plaintiffs are inapplicable. In sum, we hold that the district court did not abuse its discretion in refusing to stack the attorney fees in the manner requested by the plaintiffs.

### III. CONCLUSION

For the reasons explained above, we **AFFIRM** the district court's awards of prejudgment interest and attorney fees as set forth in its December 8, 1994 postjudgment order.

prejudgment interest as prevailing parties in ERISA litigation; we are not asked to determine the parties' rights and obligations under their employment contract.