Nancy J. KRUPP, Plaintiff,

v.

METROPOLITAN LIFE INS.
CO., Defendant.

No. 00–71024.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 10, 2001.

Steve J. Weiss, Michael F. Jacobson, Eva T. Cantarella, Hertz, Schram, Bloomfield Hills, MI, for plaintiff.

David M. Davis, Hardy, Lewis, Birmingham, MI, for defendant.

MEMORANDUM OPINION AND OR-
DER DENYING PLAINTIFF'S RE-
QUEST FOR ATTORNEY FEES
AND "OTHER DAMAGES" AND
GRANTING PLAINTIFF'S RE-
QUEST FOR REASONABLE LITI-
GATION COSTS AND PRE- AND
POST–JUDGMENT INTEREST

EDMUNDS, District Judge.

This is an ERISA action, alleging a wrongful denial of disability benefits. On August 3, 2001, this Court issued an order accepting the conclusion in the Magistrate Judge's May 11, 2001 Report and Recommendation, granted Plaintiff's motion to reverse Defendant's decision to terminate her disability benefits, denied Defendant's motion to affirm the administrator's decision, and reinstated Plaintiff's disability benefits as of the termination date. This matter is presently before the Court on Plaintiff's motion for attorney fees, litigation costs, pre- and post-judgment interest, and other damages. For the reasons stated more fully below, this Court **DENIES** Plaintiff's request for attorney fees and "other damages", and **GRANTS** Plaintiff's request for reasonable litigation costs and pre- and post-judgment interest.

## I. Analysis

### A. Compensatory or Consequential Damages

Plaintiff seeks to recover "other damages" allegedly incurred as a result of the wrongful termination of her disability benefits. Plaintiff claims that, as a result of the termination of her disability benefits, her health care coverage was also terminated by her employer Meritor Automotive. Thus, she asserts, she was forced to pay $2,731.14 in COBRA insurance payments, to incur out-of-pocket medical expenses in the amount of $1,034.64, and will incur increased tax liability when she receives the single lump sum payment of owed disability benefits. These COBRA payments, out-of-pocket medical expenses, and increased tax liability, she argues, are recoverable as "other damages" under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3) or § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). The Court is not persuaded by Plaintiff's arguments.

■■■ Compensatory or consequential damages are not available to Plaintiff under 29 U.S.C. § 1132(a)(3). As the Sixth Circuit recently observed, in *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), the United States Supreme Court "clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies." *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 615 (6th Cir. 1998). Plaintiff here, like the plaintiff in *Wilkins*, brought suit pursuant to 29 U.S.C. § 1132(a)(1)(B) challenging an ERISA plan administrator's denial of benefits. The Sixth Circuit's rationale and holding in *Wilkins* apply here as well. "Because § 1132(a)(1)(B) provides a remedy for [the plaintiff]'s alleged injury" she does not have a cause of action under any other subsection of § 1132 and thus cannot recover compensatory damages under § 1132(a)(3) for an alleged breach of a fiduciary duty. *Id.* Even if Plaintiff could seek damages under § 1132(a)(3), the Sixth Circuit has recently observed that neither punitive or compensatory damages are available under this subsection. *See Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 617–18 (6th Cir.1998) (citing *Mertens v. Hewitt Associates*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)).

■ Compensatory or consequential damages are likewise unavailable to Plaintiff under 29 U.S.C. § 1132(a)(1)(B). Plaintiff's reliance on *Williams v. Int'l Paper Co.*, 227 F.3d 706 (6th Cir.2000) for a

different result is misplaced. In *Williams,* the Sixth Circuit held that the plan administrator acted arbitrarily and capriciously when it failed to consider additional medical evidence submitted by the plaintiff and further held that it was appropriate for the court "to retroactively grant disability benefits without remanding the case where there are no factual determinations to be made" and a remand would be futile. *Id.* at 715. Without further analysis, the Court reversed the lower court's decision and remanded with instructions "to grant [Plaintiff] his retirement [disability] benefits due under the Plan, along with interest and other damages, if any, and/or attorney's fees." *Id.* at 716. There is no discussion of an award of damages other than the ERISA benefits the plaintiff claimed were wrongfully denied. Accordingly, *Williams* does not advance Plaintiff's position, and the Court is not persuaded that the "other damages" Plaintiff seeks are recoverable under 29 U.S.C. § 1132(a)(1)(B) denial of benefits claims.

### A. Attorney Fees

Under 29 U.S.C. § 1132(g)(1), the district court has discretion to order reasonable attorney fees to either party in an ERISA action. In deciding whether an award of fees is appropriate, the Court evaluates the five factors enunciated in *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir.1980). The factors are:

(1) the degree of the opposing party's culpability or bad faith;

(2) the opposing party's ability to satisfy a fee award;

(3) the deterrent effect of a fee award on others under similar circumstances;

(4) whether the party requesting the fee sought to confer a common benefit on all ERISA plan participants and beneficiaries or sought to resolve a significant legal question regarding ERISA; and

(5) the relative merits of the parties' positions.

*See Schwartz v. Gregori,* 160 F.3d 1116, 1119 (6th Cir.1998). No single factor is determinative. Rather, the Court considers each factor before exercising its discretion. *See id.*

Consideration of these five factors leads the Court to conclude that attorney fees should not be awarded to Plaintiff. As to the first factor, Plaintiff has not persuaded this Court that Defendant Metropolitan Life Insurance Co. ("MetLife")'s conduct, resulting in this litigation, warrants a finding of bad faith or culpability. MetLife, as the claims administrator for the disability benefits payable under Plaintiff's ERISA plan, has a fiduciary duty to review each participant's continued eligibility for plan benefits. Its actions in carrying out that obligation do not reveal bad faith or culpable behavior. Rather, the evidence reveals that MetLife was attempting to determine whether Plaintiff met the eligibility criteria for long term disability benefits, kept Plaintiff apprized of MetLife's process, and allowed Plaintiff repeated opportunities to obtain documentation from her treating physician concerning her ability to engage in sedentary employment. Consideration of the remaining four factors likewise fail to support an award of attorney fees.

As to the second factor, MetLife has the ability to pay reasonable attorney fees. This alone, however, does not justify an award of attorney fees. *See Foltice v. Guardsman Products, Inc.,* 98 F.3d 933, 937 (6th Cir.1996).

The third factor, the deterrent effect of an award on others in similar circumstances, does not weigh in Plaintiff's favor. Plaintiff has not persuaded the Court that MetLife participated in the sort of misbehavior that the Court should deter. "Honest mistakes are bound to happen from

time to time, and fee awards are likely to have the greatest deterrent effect where deliberate misconduct is in the offing." *Id.*

The fourth factor does not weigh in Plaintiff's favor because Plaintiff did not seek to confer a common benefit on a larger group or seek to resolve significant legal questions regarding ERISA. *See Schwartz v. Gregori*, 160 F.3d at 1121.

■ The fifth factor likewise does not weigh in Plaintiff's favor. The merit of Plaintiff's position in this case did not significantly outweigh that of MetLife. This was a much closer case than Plaintiff acknowledges. As this Court's August 3, 2001 order reflects, Plaintiff prevailed in large part due to the equivocal tone of Dr. Brystowski's opinion as to Plaintiff's ability to be gainfully employed and MetLife's reliance on that opinion in terminating her disability benefits. As the Sixth Circuit has observed, there is no presumption under ERISA to award attorney fees merely because a plaintiff has prevailed. *See id.* at 939.

Analyzing and weighing each of the above five factors, this Court concludes that Plaintiff should not be awarded attorney fees. Despite its ability to pay a fee award, the remaining factors do not tip the scales in favor or such an award in this close case. There is no evidence of bad faith or misconduct on the part of MetLife in denying benefits, an award would not have a deterrent effect on misbehavior, and Plaintiff's suit did not seek to confer a common benefit on plan participants and beneficiaries.

### B. Reasonable Litigation Costs

■ Plaintiff also seeks recovery of $1,842.37 in litigation costs, including costs for computer research, copying, mileage, parking, faxing and postage. 29 U.S.C. § 1132(g)(1) provides that a "court in its discretion may allow a reasonable attorneys fee and costs of action to either party." Plaintiff's current submission does not sufficiently describe the requested costs and lists only generalized items. Without a detailed description, the Court cannot properly assess their reasonableness. Accordingly, this Court will award Plaintiff reasonable litigation costs, subject to its review of a more specific affidavit by Plaintiff's counsel detailing the date each cost was incurred, the reason for the cost, and the amount incurred.

### C. Pre–Judgment and Post–Judgment Interest

#### 1. Pre–Judgment Interest

■ Pre-judgment interest in an ERISA action may be awarded in the Court's discretion "in accordance with general equitable principles." *Ford v. Uniroyal Pension Plan*, 154 F.3d at 616. The determination of the pre-judgment interest rate for an ERISA benefits award similarly lies within the Court's discretion. *See id.* at 619. The interest award must not be punitive in nature, but rather should compensate for the lost use of money improperly withheld. *See id.* at 618. As the Sixth Circuit recently explained, "[a]mong the constraints on a district court's discretion to shape an award of prejudgment interest in an ERISA case is the fact that we look with disfavor on simply adopting state law interest rates" because "ERISA is not an area primarily of state concern." *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir.2000) (internal quotations and citation omitted). "Interest awards should not be punitive, but should 'simply compensate a beneficiary for the lost interest value of money wrongly withheld from him or her.'" *Id.* (quoting *Ford*, 154 F.3d at 618).

Similar to the Court in *Rybarczyk*, this Court must determine how best to calculate the "lost interest value of money

wrongly withheld." *Id.* The Sixth Circuit and other courts have upheld awards of prejudgment interest calculated under the federal post-judgment statute, 28 U.S.C. § 1961. *See id.* at 986 (citing *Ford,* 154 F.3d at 619 and *Algie v. RCA Global Communications, Inc.,* 60 F.3d 956, 960 (2nd Cir.1995)). The *Rybarczyk* Court observed, however, that the § 1961 rate is not the only permissible prejudgment interest rate. It acknowledged that both the Sixth Circuit and other courts "have also upheld awards of prejudgment interest that were tied to prevailing market rates, thus reflecting what the defendants would have had to pay in order to borrow the money at issue." *Id.* at 986 (citing cases). Accordingly, in *Rybarczyk,* the Court upheld a decision awarding the plaintiffs prejudgment interest at the greater of the interest rate on 52–week treasury bills (the § 1961 rate) or "the rate of return actually realized by TRW on the money found to have been wrongfully withheld." *Id.* at 977. Finding no abuse of discretion, the Court reasoned:

> the § 1961 rate has been upheld numerous times. If that rate should prove to be the higher one for the relevant period, TRW would presumably have no legitimate basis for objecting to it. If TRW's actual rate of return turns out to have been higher than the § 1961 rate, on the other hand, a requirement that TRW pay the actual rate merely deprives TRW of its profit on the wrongfully denied benefits. In neither instance would the effect be punitive, as it might have been had the district court chosen to use a state-law rate much higher than prevailing market rates of return.

*Id.*

 Plaintiff argues here that the prejudgment interest rate should be calculated using a modified version of the method set forth in 28 U.S.C. § 1961, which provides in pertinent part that:

> (a) Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment....
>
> (b) Interest shall be computed daily to the date of payment ..., and shall be compounded annually.

28 U.S.C. § 1961. Plaintiff argues that some modifications to this statutory framework are necessary to fully compensate her for the lost interest value of money wrongly withheld. Specifically, she argues that her long term disability benefits are paid monthly, she lost the opportunity to invest the amount each month in one-year Treasury constant maturities, and thus she should receive a pre-judgment interest award that reflects these facts.

Plaintiff's proposed calculation takes the monthly average (rather than the weekly average) of one year Treasury constant maturities from March 1, 1998 (the date her disability benefits were terminated) through July 2001 (the latest month available to determine the average monthly rate). She calculates the average at 5.2% and requests that each monthly benefit wrongfully withheld accrue interest at a 5.2% annual rate from the date payment was due until the date Judgment entered (August 3, 2001). She also requests that interest be compounded monthly rather than annually. She arrives at a final prejudgment interest figure of $2,644.84 on $29,001.00 in back payments.

MetLife responded at the hearing on this matter held on October 3, 2001 that it

does not object to Plaintiff's pre-judgment interest calculation. Accordingly, pre-judgment interest is to be awarded to Plaintiff and is to be calculated in the manner she proposes.

### 2. Post–Judgment Interest

Post-judgment interest is statutorily mandated under 28 U.S.C. § 1961. The post-judgment interest rate is the weekly average one-year Treasury constant maturities rate for the calendar week preceding the Judgment, i.e., the week of July 22 through July 28, 2001. That weekly rate was 3.9%. Thus, Plaintiff will be entitled to post-judgment interest on the August 3, 2001 Judgment at the rate of 3.9%, compounded annually, and computed to the date of payment.

### III. Conclusion

For the above stated reasons, this Court **DENIES** Plaintiff's request for attorney fees and "other damages" and **GRANTS** Plaintiff's request for reasonable litigation costs and pre-judgment and post-judgment interest.