*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0418P (6th Cir.)
File Name: 00a0418p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

RICHARD J. RYBARCZYK,
MINORU MIZUBA, and
WILLIAM RITTENHOUSE,
       *Plaintiffs-Appellees*,

      *v.*

TRW, INC. and TRW
SALARIED PENSION PLAN,
      *Defendants-Appellants*.

No. 97-4167

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
Nos. 95-02800; 96-02493—Ann Aldrich, District Judge.

Argued: December 9, 1998

Decided and Filed: December 21, 2000

Before: WELLFORD, NELSON, and DAUGHTREY,
Circuit Judges.

1

in my view, readily distinguishable. *See Marshall v. Security State Bank of Hamilton (In re Marshall)*, 970 F.2d 383, 385 (7th Cir. 1992) (distinguishing *Lorenzen*). It was a split decision and there was a strong overtone of wrongdoing by the employer in that case, unlike TRW's role in the instant case. The *Lorenzen* court was particularly concerned about the welfare and need for "full compensation of the victim" and his widow. I would, accordingly, conclude that awarding any prejudgment interest beyond that called for in 28 U.S.C. § 1961 was an abuse of discretion.

---

### COUNSEL

**ARGUED:** David S. Cupps, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, for Appellants. Eric H. Zagrans, ZAGRANS LAW FIRM, Elyria, Ohio, for Appellees. **ON BRIEF:** David S. Cupps, Robert N. Webner, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, John Winship Read, Amanda Martinsek, VORYS, SATER, SEYMOUR & PEASE, Cleveland, Ohio, for Appellants. Eric H. Zagrans, ZAGRANS LAW FIRM, Elyria, Ohio, Robert D. Gary, Lorain, Ohio, Paul E. Slater, SPERLING, SLATER & SPITZ, Chicago, Illinois, for Appellees.

NELSON, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. WELLFORD, J. (pp. 22-23), delivered a separate opinion concurring in part and dissenting in part.

---

### OPINION

---

DAVID A. NELSON, Circuit Judge. Here we have an appeal by a manufacturing company and its pension plan from a summary judgment in favor of a class of employees who took early retirement from the company. The plaintiff class-members claimed that the lump sum pension benefits distributed to them at retirement were too low in amount.

The district court concluded that the employer (TRW, Inc.) was collaterally estopped to make its lump sum benefit calculations under a methodology less favorable to the retirees than that mandated by this court in an earlier class action, *Costantino v. TRW, Inc.*, 13 F.3d 969 (6th Cir. 1994). The district court further held that the members of the class were entitled to prejudgment interest at the greater of the interest rate on 52-week U.S. Treasury bills or the rate of return

---

**CONCURRING IN PART, DISSENTING IN PART**

---

HARRY W. WELLFORD, Circuit Judge, concurring in part and dissenting in part. I concur entirely with my colleague, Judge Nelson, through part II.B of his opinion. I would hold, however, that we should adhere to our usual procedure and deem that plaintiffs have waived any anti-cutback argument in this appeal under *Brindley v. McCullen*, 61 F.3d 507 (6th Cir. 1995); *see also Wright v. Holbrook*, 794 F.2d 1152 (6th Cir. 1986). This case is not about loss of vested benefits under our ruling as to pre-December 18, 1996 provisions of the plan and amended plans. TRW has, indeed, dealt generously with its employees, and I would not stretch our procedures to consider that which plaintiffs have failed adequately to argue or brief. I think that the rationale to reverse is supported by the effect of the IRS' approval or "favorable 'determination letter'" issued with respect to the TRW plan, amended effective January 1, 1989.

In general, I deem *Constantino* not controlling under the differing facts and circumstances of this case. Plaintiffs are not entitled to the post-amendment claim that they assert.

I dissent with respect to the award of prejudgment interest, particularly in view of the generous awards heretofore ordered by this court as to retirement benefits deemed to be accrued. In the first place, "ERISA does not mandate the award of prejudgment interest to prevailing plan participants." *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 616 (6th Cir. 1998). It may be awarded at the reasonable discretion of the district judge. *See id.* The purpose of any such award is not to punish the employer. *See id.* at 617. I would hold that plaintiffs are more than adequately compensated by award under 28 U.S.C. § 1961, and not some other rate. *See Ford*, 154 F.3d at 619. *Lorenzen v. Employees Retirement Plan of Sperry & Hutchinson Co.*, 896 F.2d 228 (7th Cir. 1990), cited as support for the majority's prejudgment interest decision, is,

actually realized by TRW on the money found to have been wrongfully withheld.

Upon *de novo* review of the benefit calculation issue, we conclude that the plaintiff class is not entitled to avail itself of the collateral estoppel doctrine. We further conclude, however, that the portion of the lump sum payments attributable to service rendered prior to a certain plan amendment adopted on December 18, 1986, reflects a violation of the "anti-cutback rule" contained in the Employee Retirement Income Security Act of 1974 ("ERISA") and the Internal Revenue Code (the "I.R.C." or "Code"). There was no violation, in our view, with respect to the portion attributable to service rendered subsequent to the amendment.

As to the district court's resolution of the prejudgment interest question, we find no abuse of the court's discretion.

The challenged judgment will be affirmed in part and reversed in part.

I

As of 1984 – prior to the enactment by Congress of the first of a series of ERISA and I.R.C. amendments that we shall describe presently – TRW's Salaried Pension Plan (a defined benefit plan, as opposed to a defined contribution plan) offered employees a "normal retirement" option and an "early retirement" option. Employees electing to retire at age 65 were entitled to receive a normal retirement annuity consisting of specified monthly payments starting at age 65 and continuing until the retiree's death. The second option was designed to provide an incentive for early retirement by offering salaried employees who retired between ages 60 and 65 the same annuity, with the same monthly payments, starting immediately on retirement. (In addition, a slightly reduced monthly payment was offered to employees who retired between ages 55 and 60.) Because the level of benefits for early retirees was not lowered (or was not sufficiently lowered) to make up for the increase in the length of time

over which payments would be made to them, the total lifetime pension benefit available to early retirees was greater than the total lifetime benefit available to age-65 retirees. The benefit received by early retirees was called, in the jargon of the cognoscenti, a "subsidized" benefit.

The plan also provided that retirees could elect to take their pension benefits in a lump sum, payable up-front, rather than as a series of monthly payments. The amount of the lump sum was calculated under a prescribed formula that discounted the monthly payment stream to its present value. Prior to 1986, the plan provided that the interest rate used in making the present value calculation would be the Moody's Aaa bond rate.

In the Retirement Equity Act of 1984,[1] Congress set a ceiling on the interest rates that could be used in calculating the present value of future pension payments. (It will be helpful to keep the following relationship in mind: the higher the interest rate utilized in the present value calculation, the lower the lump sum produced by that calculation.) Under the statute, the interest rate was capped at a level set by the Pension Benefit Guaranty Corporation. This rate – the technical derivation of which need not concern us here – is commonly called the "PBGC rate." The statutory cap meant that TRW employees electing to take their early retirement benefits in a lump sum would receive payments substantially greater in amount than the payments to which they would have been entitled under the plan as originally written.[2]

---

[1] Pub. L. No. 98-397, 98 Stat. 1426 (1984) (amending ERISA §§ 203(e)(2) and 205(g)(3), 29 U.S.C. §§ 1053(e)(2) and 1055(g)(3), and I.R.C. (26 U.S.C.) §§ 411(a)(11) and 417(e)(3)).

[2] On its face, the proposition that Congress could and did presume to abrogate the settled expectations of the contracting parties retroactively might seem open to question. See *Landgraf v. USI Film Prods.*, 511 U.S. 244, 271 (1994). TRW has not challenged the constitutionality of the retroactive application of the newly-adopted interest rate cap, however, and we intimate no opinion on this issue one way or the other.

neither instance would the effect be punitive, as it might have been had the district court chosen to use a state-law rate much higher than prevailing market rates of return. *Cf. Ford*, 154 F.3d at 617 (holding that Michigan's state law rate of 12 percent was punitive for purposes of ERISA because it was meant to compensate the winner for litigation expenses and was higher than the market rate of roughly nine percent).

TRW argues that the district court's award of prejudgment interest has the effect of amending the plan "to confer a benefit which no other Plan participant will receive." This argument is, in our view, misguided. If the plaintiffs received lump sum distributions in amounts less than those to which they were actually entitled, the entry of judgment for the amount of the shortfall with interest through the end of the litigation would simply make the plaintiffs whole. This is not a "benefit" for which other plan participants are ineligible; other participants would have been equally eligible for prejudgement interest had they found it necessary to go to court to obtain benefits wrongfully denied them.

TRW also argues that the award of prejudgment interest under the formula challenged here will result in a "windfall recovery for plan participants." We disagree. If the award of prejudgment interest were lower than TRW's actual rate of return, it is TRW that would arguably receive a windfall. Because the plan with which we are concerned in this case is a defined benefit plan, TRW has to contribute only enough money to fund the plan's defined obligations. If TRW were able to keep part of the return on wrongfully withheld funds, it would have to contribute that much less to fund the plan's obligations to other retirees.

The judgment of the district court is **AFFIRMED** in part and **REVERSED** in part, and the case is **REMANDED** for further proceedings not inconsistent with this opinion.

*Employees Relief Ass'n*, 727 F.2d 566, 579 (6th Cir. 1984) (using adjusted prime rate); *Katsaros v. Cody*, 744 F.2d 270, 281 (2d Cir. 1984) ("Expert testimony revealed that at the time . . . other banking institutions were in the market to borrow at a rate of prime plus one percent. Awarding prejudgment interest in accord with prevailing interest rates is consistent with prior case law"); *Donovan v. Mazzola*, 716 F.2d 1226, 1232-33 (9th Cir. 1983). Despite TRW's claim that an award of prejudgment interest based on the actual rate of return is unprecedented, the Seventh Circuit seems to have upheld just such an award. See *Lorenzen v. Employees Ret. Plan of Sperry & Hutchinson Co.*, 896 F.2d 228, 236-37 (7th Cir. 1990) ("The retirement plan held money that belonged to Mrs. Lorenzen – held it on her account, as it were. Now that the collateral dispute is over, the plan must return it to her together with the fruits that it has gleaned by holding on to it").

Using the interest rate actually realized by TRW on the relevant funds seems an appropriate way of avoiding unjust enrichment. As we declared in an earlier case, "[t]o allow the Fund to retain the interest it earned on funds wrongfully withheld would be to approve of unjust enrichment." *Sweet v. Consolidated Aluminum Corp.*, 913 F.2d 268, 270 (6th Cir. 1990) (quoting *Short v. Central States, Southeast & Southwest Areas Pension Fund*, 729 F.2d 567, 576 (8th Cir. 1984)).

We are aware of no decision approving a formula like the one used here, where the plaintiffs are to receive the higher of the § 1961 rate or the rate actually realized by TRW. But although this formula may be unusual, we are not persuaded that it represents an abuse of discretion. As we have already noted, the § 1961 rate has been upheld numerous times. If that rate should prove to be the higher one for the relevant period, TRW would presumably have no legitimate basis for objecting to it. If TRW's actual rate of return turns out to have been higher than the § 1961 rate, on the other hand, a requirement that TRW pay the actual rate merely deprives TRW of its profit on the wrongfully denied benefits. In

The Retirement Equity Act also provided that early retirement subsidies such as those offered in the TRW plan were subject to an "anti-cutback" rule embodied in ERISA and the Internal Revenue Code. The anti-cutback rule prohibits the amendment of pension plans in such a way as to reduce benefit rights that have already accrued. See ERISA § 204(g), 29 U.S.C. § 1054(g), and I.R.C. (26 U.S.C.) § 411(d)(6) (1984).[3]

---

[3] ERISA § 204(g), captioned "**Decrease of accrued benefits through amendment of plan**," provides in pertinent part as follows:

"(1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . . .

(2) For purposes of paragraph (1), a plan amendment which has the effect of–

(A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or

(B) eliminating an optional form of benefit,

with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy. . . ."

The corresponding section of the Internal Revenue Code, 26 U.S.C. § 411(d)(6), denies favorable tax treatment to a plan amended in violation of an anti-cutback rule framed in essentially the same terms.

As of October 22, 1986, the Tax Reform Act of 1986[4] retroactively raised the interest rate ceiling where the vested accrued benefit (calculated in a manner specified by statute) exceeded $25,000. The new ceiling for such distributions was 120 percent of the PBGC rate. (The amended ceiling – *i.e.*, the PBGC rate for distributions of $25,000 or less and 120 percent of the PBGC rate for distributions exceeding $25,000 – is commonly called the "§ 1139 rate," after the relevant section of the Tax Reform Act.)  The Code and ERISA also provided that a plan could not distribute a benefit in a lump sum without the participant's consent if the benefit was over $3,500.[5]

---

[4]Pub. L. No. 99-514 § 1139, 100 Stat. 2085, 2487 (1986), codified at ERISA §§ 203(e)(2) and 205(g)(3), 29 U.S.C. §§ 1053(e)(2) and 1055(g)(3) (1988) and I.R.C. (26 U.S.C.) §§ 411(a)(11)(B) and 417(e)(3) (1988).  The above-cited sections of ERISA and the I.R.C. were later amended by the Retirement Protection Act of 1994, Pub. L. No. 103-465, 108 Stat. 5038 (1994).  That Act, however, did not become applicable until July 1, 1996 – a date which, not coincidentally, is the closing date for membership in the present plaintiff class.  The class representatives and TRW have agreed that the older statutory provisions govern this case.

[5]Specifically, I.R.C. § 417(e)(2) and (3) provided as follows:

C

As to the district court's award of prejudgment interest under the formula described at p. 11, *supra*, we have "long recognized that the district court may [award prejudgment interest] at its discretion in accordance with general equitable principles." *Ford v. Uniroyal*, 154 F.3d 613, 616 (6th Cir. 1998).  We therefore apply an "abuse of discretion" standard in reviewing the award.

Among the constraints on a district court's discretion to shape an award of prejudgment interest in an ERISA case is the fact that we look with disfavor on simply adopting state law interest rates.  ERISA is "not an area 'primarily of state concern.'" *Ford*, 154 F.3d at 617.  Interest awards should not be punitive, but should "simply compensate a beneficiary for the lost interest value of money wrongly withheld from him or her." *Id.* at 618.

The question faced by the district court in this case, then, was how best to calculate the "lost interest value of money wrongly withheld . . . ." TRW urges that the only appropriate rate would be either that established by 28 U.S.C. § 1961 – a rate tied to the average 52-week United States Treasury bill rate for the relevant period – or a rate linked to the PBGC rate in the manner prescribed by § 1139.

We have upheld a district court's award of prejudgment interest calculated under 28 U.S.C. § 1961. *Ford*, 154 F.3d at 619.  Other courts have done so as well.  See, *e.g.*, *Algie v. RCA Global Communication, Inc.*, 60 F.3d 956, 960 (2d Cir. 1995) (upholding a district court's choice of the § 1961 rate on the grounds that it provided a "closer approximation of the likely return on plaintiffs' unpaid benefits").

This is not to say, however, that the § 1961 rate is the only permissible prejudgment interest rate.  Our court and others have also upheld awards of prejudgment interest that were tied to prevailing market rates, thus reflecting what the defendants would have had to pay in order to borrow the money at issue.  See, *e.g.*, *EEOC v. Wooster Brush Co.*

determination based on this incorrect assumption is entitled to no presumption of validity.

The Second Circuit, moreover, has said that a "favorable determination letter indicates only that an employee retirement plan qualifies for favorable tax treatment by meeting the formal requirements of I.R.C. § 401(a)." *Esden v. Bank of Boston*, No. 99-7210, 2000 U.S. App. LEXIS 23227, at *64 (2d Cir., Sept. 12, 2000). That court went on to say that "adjudication of [an employee's] rights is for the federal courts, not the field offices of the IRS." *Id.* at *65. Subject to the qualification that determination letters carry a rebuttable presumption of validity, we are constrained to agree. The determination letter does not change our analysis in the case at bar.

In brief summary, then, our conclusion is this:

– Employees taking early retirement after December 18, 1986, and electing to receive their accrued retirement benefits in a lump sum, are entitled to have the § 1139 rate used in the determination of the present value of subsidized benefits attributable to service before the amendment;

– With respect to unsubsidized retirement benefits attributable to service after the amendment, such employees are entitled to receive the advantage of the alternative present value calculation prescribed by the plan amendments adopted on October 24, 1988; and

– Each member of the plaintiff class should be awarded judgment for the amount, if any, by which the lump sum to which he or she is entitled exceeds the lump sum actually paid.

Because of the ballooning effect of the Retirement Equity Act on early retirement lump sum distributions (or so we surmise), TRW eventually decided to eliminate any early retirement subsidy where the lump sum form of payment was

---

"**(2) Plan may distribute benefit in excess of $3,500 only with consent.** — If —
  (A) the present value of the qualified joint and survivor annuity or the qualified preretirement survivor annuity exceeds $3,500, and

  (B) the participant and the spouse of the participant (or where the participant has died, the surviving spouse) consent in writing to the distribution,

the plan may immediately distribute the present value of such annuity.

**(3) Determination of present value.** —

  **(A) In general.** — For purposes of paragraphs (1) and (2), the present value shall be calculated —

    (i) by using an interest rate no greater than the applicable interest rate if the vested accrued benefit (using such rate) is not in excess of $25,000, and

    (ii) by using an interest rate no greater than 120 percent of the applicable interest rate if the vested accrued benefit exceeds $25,000 (as determined under clause (i)).

  In no event shall the present value determined under subclause (II) [sic] be less than $25,000.

  **(B) Applicable interest rate.** — For purposes of subparagraph (A), the term 'applicable interest rate' means the interest rate which would be used (as of the date of the distribution) by the Pension Benefit Guaranty Corporation for purposes of determining the present value of a lump sum distribution on plan termination."

ERISA's parallel provision (since amended) was codified at 29 U.S.C. § 1055(g)(3).

chosen. This decision was implemented in plan amendments adopted on December 18, 1986 – a date critically important, as we shall see, to the resolution of the case now before us.

With the December 18 amendments, which were made retroactive to January 1, 1985, TRW's retirement plan provided in relevant part as follows:

> "The lump sum benefit shall be the present value of the monthly single life annuity (*excluding any early retirement subsidy*) to which the Participant would have been entitled except for the election of the lump sum form of payment. The lump sum shall include the present value of the anticipated Post-Retirement Adjustments which would have been made had the Participant elected monthly payments." TRW Salaried Pension Plan, Section 5.9(b)(i), as amended December 18, 1986 (emphasis supplied).[6]

The elimination of the early retirement lump sum subsidy gave rise to the class action in which we issued the decision reported as *Costantino v. TRW, Inc.*, 13 F.3d 969 (6th Cir. 1994). The *Costantino* class was made up of TRW employees who had taken early retirement between January 1, 1985, and October 22, 1986, and who had elected to receive lump sum distributions. It was claimed on behalf of this class that the retroactive amendments adopted on December 18, 1986, violated the anti-cutback rule quoted in note 2, *supra*.

---

[6]The amended plan also provided, as to distributions with respect to 1985 and 1986, that the interest rate for distributions not exceeding $25,000 would be the PBGC rate at the beginning of the calendar year, while for distributions over $25,000 the interest rate would be the lesser of the Moody's Aaa rate or the § 1139 rate at the beginning of the calendar year. The amended plan contained an almost identical provision regarding interest rates for the years 1987 and thereafter, except that the PBGC rate would be the one in effect during the month of distribution. TRW Salaried Pension Plan, §§ 5.9(b)(iii)(B) and (C), as amended December 18, 1986.

The language of the TRW plan itself suggests that the drafters shared our understanding that prior to December 18, 1986, early retirement subsidies were subject to accrual. Section 5.5 of the plan, for example, says that the lump sum benefit will be calculated as the greater of the Moody's rate applied to the "*accrued or subsidized* Early Retirement Benefit" [emphasis added] or 120 percent of the PBGC rate applied to the "accrued Normal or unsubsidized" benefit. By using "accrued" and "subsidized" as synonyms, this provision indicates that the early retirement subsidized benefit can be accrued.

Our conclusion is not undermined, as we see it, by the favorable "determination letter" that TRW received from the Internal Revenue Service with respect to the TRW pension plan as amended effective January 1, 1989. Although this letter, by its terms, "relates only to the status of [TRW's] plan under the Internal Revenue Code," ERISA contains a provision requiring the Secretary of Labor to accept favorable determination letters "as prima facie evidence of initial compliance by the plan with the standards [of relevant portions of ERISA]." 29 U.S.C. § 1201(d). As far as the anti-cutback rule is concerned, however, we are not persuaded that the letter is prima facie evidence of anything.

This is so because of the representations that TRW made to the IRS in requesting the letter. In an IRS form entitled "Application for Determination for Employee Benefit Plan," TRW was asked this question: "Does any amendment to the plan reduce or eliminate any section 411(d)(6) protected benefit?" (It may be recalled that § 411(d)(6) is the I.R.C. counterpart of the anti-cutback rule contained in ERISA § 204(g).) In response to this question as to whether any amendment to the TRW plan reduced or eliminated any benefit protected by the anti-cutback rule, TRW checked a box marked "No."

TRW's answer, as we have demonstrated, was incorrect. The IRS, however, was entitled to assume that TRW had answered the question correctly – and a favorable

Failure to raise an issue on appeal would normally constitute a waiver of that issue. *Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995). Here, however, we have a pure question of law that cries out for resolution – and in such a situation we are not foreclosed from considering the issue. See *Dorris v. Absher*, 179 F.3d 420, 425 - 26 (6th Cir. 1999) (allowing appellate consideration of an unbriefed issue that involved a misinterpretation of a "pure question of law, with no material facts being in dispute"). Given the paternalistic purposes underlying ERISA, and given the Congressional findings and declaration of policy set forth in Title I, § 2 of the statute, 29 U.S.C. § 1001,[10] we consider this a particularly appropriate case for exercising our discretion to address the unbriefed issue. We shall proceed to do so.

The Tax Reform Act, as we have seen, required TRW to determine the present value of the annuity benefits of employees electing early retirement "using an interest rate no greater than 120 percent of the [PBGC] rate if the vested accrued benefit exceeds $25,000 . . . ." 26 U.S.C. § 417(e)(3), quoted at n.4, *supra*. Under the anti-cutback rule, the right to a present value calculation made under this statutory interest rate cap "with respect to benefits attributable to service before the amendment" is a right that must be treated as "accrued" as long as the amendment has the effect of "eliminating or reducing an early retirement benefit or a retirement-type subsidy . . . ." ERISA § 204(g), quoted at n.2, *supra*. And because such a right must be treated as having accrued insofar as it is attributable to service before the plan amendment, it is, to that extent, protected by the prohibition contained in § 204(g)(1): "The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . . ." That is what the statute clearly says, and that is clearly the logic of our decision in *Costantino*.

---

[10]One of the considerations that led to the enactment of ERISA is described in these terms: "despite the enormous growth in such [retirement] plans[,] many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans . . . ." *Id.*

TRW argued in *Costantino* that the amendments had not reduced the benefit in terms of real dollars. This court held, however, that regardless of the dollar amount of the lump sum distribution, the anti-cutback rule prohibited elimination of the early retirement subsidy for a retiree who had already qualified for the subsidy. *Costantino*, 13 F.3d at 977-78.

TRW also argued in *Costantino* that the rate cap was applicable only to "accrued benefits," a term that according to TRW meant only unsubsidized benefits. *Id.* at 978. This court rejected TRW's arguments in a two-part analysis. First, we noted, a Treasury Department regulation codified at 26 C.F.R. § 1.411(a)-11(a)(2) required that the amount of any accrued benefit be calculated in accordance with prescribed valuation rules that contemplated use of the § 1139 rate. *Costantino*, 13 F.3d 979. Second, the regulation required that the *subsidized* early retirement benefit be treated as an accrued benefit for purposes of the anti-cutback rule. *Id.* The regulation, *Costantino* declared, "expressly requires that, where a plan provides that a lump sum distribution of a subsidized early retirement benefit is available as an option, the section 1139 interest rate must be applied to calculate the value of the distribution." *Id.* And the regulation, said *Costantino*, "treats subsidized benefits as if they were accrued benefits" for the purpose of "limiting an employer's ability to distribute benefits without appropriately calculating the value of any subsidies." *Id.*

Turning to the case at bar, we note that plaintiff Richard Rybarczyk represents a class of TRW retirees who retired between October 23, 1986, and July 1, 1996. Plaintiffs Minoru Mizuba and William Rittenhouse represent a class of retirees who retired between January 1, 1989, and July 1, 1996. The two classes have been merged for purposes of the lawsuit. All members of the merged class have received lump sum distributions of more than $25,000.

The members of this class were beneficiaries of certain plan amendments adopted by TRW on Oct. 24, 1988, retroactive to Jan. 1, 1985. Insofar as lump sum payments of more than

$25,000 were concerned, the 1988 amendments called for alternative calculations:  the Moody's Aaa rate was to be applied to the *subsidized* early retirement benefit, and 120 percent of the PBGC rate was to be applied to the *unsubsidized* early retirement benefit, with the amount of the lump sum payment being determined under the calculation that would give the employee the *larger* benefit.[7] Notwithstanding that the 1988 amendments yielded more generous lump sum payments than those provided for by the version of the plan in effect prior to the amendments, the plaintiffs contend that use of the Moody's rate under *any* circumstance violates the relevant provisions of ERISA and the I.R.C.[8]

In granting summary judgment to the plaintiffs, the district court relied on the doctrine of collateral estoppel. *Costantino*, said the district court, had "clearly held that § 1139 applies whenever a plan calculates the present value of subsidized benefits." *Rybarczyk v. TRW, Inc.*, 1997 U.S. Dist. LEXIS 3186, at *23 (N.D. Ohio 1997).  Therefore, the district court concluded, TRW could "no longer assert . . .that the law allows it to calculate the present value of a subsidized benefit without using the § 1139 rate.  TRW raised these very

---

[7] The plan retained the distinction between years 1985 and 1986 (for which the PBGC rate was set at the beginning of the calendar year) and years 1987 and 1988 (for which the PBGC rate was set at the month of distribution).

[8] The plaintiffs persistently characterize their claims as alleging violations of the I.R.C. (*e.g.*, 26 U.S.C. § 417(e)).  Technically, violations of the Code merely result in the loss of preferred tax treatment, including the employer's deduction for contributions under I.R.C. § 401(a) and the employees' tax deferral under I.R.C. § 402(a).  Because ERISA provisions are deliberately designed to parallel those of the I.R.C., however, we shall treat the plaintiffs' claims as arising under ERISA and as brought pursuant to ERISA's right-of-action provision, 29 U.S.C. § 1132.  See *Counts v. Kossack Water & Oil Serv., Inc.*, 986 F.2d 1322, 1324 n.1 (10th Cir. 1993).  We also note that ERISA provides that regulations promulgated by the Treasury Department pursuant to I.R.C. §§ 410(a), 411, and 412 are deemed applicable to the parallel provisions of ERISA.  29 U.S.C. § 1202(c).

regulations that can fairly be said to make such a bonus problematic in any way.

Unless we ignore the anti-cutback rule embodied in ERISA § 204(g), however, the 1986 plan amendments would be highly problematic to the extent they eliminated the prospect of early retirement lump sum payments calculated on the basis of subsidized annuity benefits attributable to service performed before the date (December 18, 1986) on which the amendments were adopted.  The anti-cutback rule (which is quoted in note 2, *supra*) clearly barred TRW from amending its retirement plan in such a way as to reduce accrued early retirement benefits "attributable to service before the amendment . . . ."  Most or all of the retirees in the class before us here must have had what would amount to a mix of accrued early retirement benefits, with part being attributable to service rendered before the plan was amended on December 18, 1986, and part being attributable to service rendered after that date.  Although nothing in ERISA § 204(g) prevented TRW from reducing benefits attributable to *post-*December 18 service, accrued benefits attributable to *pre-*December 18 service had to remain inviolate.  And, under § 204(g), benefits attributable to pre-December 18 service remain inviolate whether the age condition be satisfied "before or after the amendment . . . ."

As mentioned in n.8, *supra*, Mr. Rybarczyk raised this issue in paragraph 23 of his class action complaint.  Paragraph 23 reads as follows:

> "TRW's Plan violates the anti-cutback provisions of ERISA and the Code, and provides lower lump sum distributions to Plan participants than they are properly entitled to receive, when it applies the present value calculation to an impermissible benefit, excluding the early retirement subsidy, notwithstanding the fact that the calculation uses the permissible interest rate."

Curiously, however, the plaintiffs have failed to press this point on appeal.

unsubsidized amount, or the Moody's rate applied to a subsidized amount, yields a larger amount."

Finally, TRW stresses that ERISA does not mandate any particular benefits. Specifically, TRW points out, nothing in ERISA requires that pension plans "offer subsidized lump sum early retirement payments."

TRW's argument seems sound as far as it goes. It is certainly true that until the 1988 amendments liberalized the lump sum benefit calculation for early retirees, the 1986 version of the plan did not provide for lump sum distributions of subsidized benefits; the only lump sum on offer to an early retiree under the 1986 plan was a sum based on the present value of the *normal* (*i.e.* unsubsidized) retirement annuity benefit. And setting aside the anti-cutback rule for the moment, we see absolutely nothing wrong in this. The applicable Treasury Department regulations say, unambiguously, that

"if a plan that provides a subsidized early retirement annuity benefit specifies that the single sum distribution benefit available at early retirement age is *the present value of the normal retirement annuity benefit*, then *the normal retirement annuity benefit is used* to apply the valuation requirements of this section and the resulting amount of the single sum distribution available at early retirement age." 26 C.F.R. § 1.411(a)-11(a)(2) (emphasis supplied).

With the liberalization of the benefit calculation formula in 1988, of course, the plan introduced a possibility that the *subsidized* early retirement annuity benefit would play a role in the calculation. But such use of the subsidized benefit was prescribed only where application of the Moody's rate to that benefit yielded a larger lump sum than the retiree would have received under the 1986 edition of the plan, in which the § 1139 rate had to be applied to the *unsubsidized* retirement annuity benefit. The 1988 amendments merely provided for the possibility of some icing on the early retirement cake – and we are aware of nothing in ERISA, the Code, or the

arguments before the Sixth Circuit in *Constantino*, and the Sixth Circuit ruled against it." *Id.* at *27.

The district court also awarded prejudgment interest to the plaintiffs at a rate determined in accordance with the following formula:

"[T]he greater of (a) interest at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the initial lump sum distribution to the class member, compounded annually, or (b) interest equal to the rate of return actually earned on the principal amount of the underpayment during the prejudgment period." *Rybarczyk*, 1997 U.S. Dist. LEXIS 13848, at *15 - *16.

In the present appeal, TRW challenges both the district court's use of collateral estoppel and the court's prejudgment interest rate formula.

## II

### A

The doctrine of collateral estoppel, as the district court explained, precludes a party from relitigating issues resolved against that party in a prior proceeding. See *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). If the benefit of the collateral estoppel doctrine is to be claimed successfully,

"(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;

(2) determination of the issue must have been necessary to the outcome of the prior proceeding;

(3) the prior proceeding must have resulted in a final judgment on the merits; and

(4) the party against whom estoppel is sought must have had full and fair opportunity to litigate the issue in the prior proceeding." *United States v. Sandoz Pharmaceuticals Corp.*, 894 F.2d 825, 826-27 (6th Cir. 1990).

The first of these requirements, as we see it, has not been met in the case at bar. TRW asserted in *Costantino* that the regulations did not require use of the § 1139 rate for subsidized benefits under the 1986 plan amendments inasmuch as adoption of the amendments meant that the plan did not offer a subsidized lump sum as an option. The *Costantino* court responded that while TRW's assertion "may be true, it is not relevant in the present case, in which Plaintiffs qualified for their subsidies prior to the 1986 plan amendment." *Costantino*, 13 F.3d at 979. In the case at bar, however, the plaintiff class is presumably made up largely, if not entirely, of people who did not take early retirement until after the 1986 amendments. This class thus includes retirees who assert that they qualified for subsidies at least partially on the strength of service performed after the 1986 amendments. To that extent, obviously, this case does not involve the "precise issue" decided in *Costantino*.[9]

In *Costantino*, moreover, nothing much turned on the 1988 amendments. In the present case, by contrast, the plaintiffs concentrate most (if not all) of their fire on the 1988 amendments. That being so, we are not persuaded that the plaintiffs are entitled to avail themselves of the collateral estoppel doctrine.

---

[9]We note that TRW attempts to draw a distinction between *Costantino* and this case  on the ground that *Costantino* involved ERISA's anti-cutback rule while here the plaintiffs "do not even invoke those provisions." Mr. Rybarczyk did invoke ERISA's anti-cutback rule in ¶ 23 of his class action complaint, however, so this distinction will not wash.

B

The inapplicability of collateral estoppel does not mean that TRW automatically wins. We must still examine the parties' arguments in light of the *Costantino* decision (which has precedential effect under the doctrine of *stare decisis*) and the relevant federal law and regulations.

The plaintiffs make much of the statement in *Costantino* that 26 C.F.R. § 1.411(a)-11(a)(2) "expressly requires that, where a plan provides that a lump sum distribution of a subsidized early retirement benefit is available as an option, the section 1139 interest rate must be applied to calculate the value of the distribution." *Costantino*, 13 F.3d at 979. TRW's response is that the plan does not offer an option of a "lump sum distribution of a subsidized early retirement benefit." Before the 1988 amendments, rather, the plan offered a lump sum distribution of the *unsubsidized* benefit calculated with the PBGC rate – and the 1988 amendments merely added an alternate calculation method in which the Moody's rate is applied to the subsidized level of benefit. This alternate calculation, in TRW's submission, does not create a stand-alone option of a lump sum distribution of the subsidized benefit. The option entails the election of a lump sum distribution *per se*, and only after the lump sum distribution is selected does the plan present alternative calculation methods.

TRW further points to this court's definition of "optional form of benefit" in *Ross v. Pension Plan for Hourly Employees of SKF Indus.*, 847 F.2d 329, (6th Cir. 1988), as meaning a benefit that "involves the power or right of an employee to choose the way in which payments due to him under a plan will be made or applied." *Id.* at 333. TRW argues that the plaintiffs do not have the "power or right" to choose a subsidized lump sum for payment; once a given retiree has chosen a lump sum distribution, rather, the plan "automatically determines the payment amount based solely upon whether the Section 1139 rate applied to the standard