**NOT RECOMMENDED FOR PUBLICATION**
File Name: 19a0045n.06

**No. 18-5186**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| K.C., a minor, by and through his parents, T.C. and K.C., | ) | **FILED**<br>Jan 29, 2019<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| MARSHALL COUNTY BOARD OF EDUCATION, | ) | |
| Defendant-Appellant. | ) | |

BEFORE: GRIFFIN and DONALD, Circuit Judges; BERTELSMAN, District Judge[*]

PER CURIAM.

A young, severely disabled child was allegedly abused by his special education teacher, and his parents sued on his behalf because they were dissatisfied with the school board's handling of the matter. The district court determined that plaintiff had raised no triable issue of fact and dismissed his claims on summary judgment. For the reasons that follow, we **AFFIRM**.

I.

T.C. (mother) and K.C. (father) are the parents of their son, plaintiff K.C., who has cerebral palsy and autism, is non-verbal, and is fed through a gastronomy tube in his stomach. K.C. attended Central Elementary, a public school in Marshall County, Kentucky.

---

[*] The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

During the 2015–16 school year, K.C. was in third grade and was placed in a "functional mental disability" classroom taught by special education teacher Crystal Teckenbrock. Teckenbrock was assisted by several aides, including Joanna Cash, Lindsay Hall, and Jennifer Parker.

In late April 2016, the mother of one of K.C.'s classmates, Heather Lane, told T.C. that Lane's child had come home very upset because Teckenbrock was mean to K.C. The child stated that Teckenbrock yelled at K.C., got in his face, yanked him, was very rough with him, and placed him in timeout for long periods of time. T.C. testified that prior to this conversation, she had never received any report of mistreatment of her son.

Shortly thereafter, on approximately May 1, 2016, T.C. and K.C.'s father met with aide Joanna Cash at a local restaurant. Cash had contacted T.C. a few days before about K.C. T.C. testified that Cash told them that she was "tired of crying herself to sleep because she's witnessed Ms. Crystal abusing K.C." T.C. further testified that Cash stated that she had witnessed Teckenbrock pull K.C.'s hair, scream at him in his face, and place him in timeouts for hours at a time. In her deposition, Cash denied telling K.C.'s parents these things and stated that she simply delivered to them a box of K.C.'s things from school, including some papers. A paper that the parents say Cash gave them listed alleged instances of Teckenbrock abusing K.C., but Cash testified that she did not author that paper. Nonetheless, Cash testified that she agreed that most of the instances described in the paper had happened.[1]

After this conversation, T.C. and K.C. withdrew K.C. from school.

---

[1] K.C.'s father secretly recorded this conversation with Cash. The transcript of that recording suggests strongly that Cash did, in fact, author the document listing instances of Teckenbrock abusing K.C. in the form of proposed questions for the parents to ask Teckenbrock. Cash also described instances of alleged abuse consistent with what the parents later reported to the Sheriff.

On May 1, 2016, T.C. and K.C.' father reported Teckenbrock's alleged abuse to the Marshall County Sheriff's Office. K.C.'s father testified that he played the recording of the meeting with Cash at the Sheriff's office.

The Sheriff's Department contacted Pat Gold, the Interim Principal at Central Elementary, and informed her that the Sheriff's Department would be conducting an investigation, led by Ray Chumbler, a Sheriff's Deputy and the School Resource Officer assigned to the Marshall County Schools. Gold, in turn, informed Trent Lovett, the Superintendent of Marshall County Schools.

Chumbler interviewed Jennifer Parker (whose last name later changed to Love), Cash, and Teckenbrock. At Gold's request, Stephen Flatt, the Director of Education at Marshall County Schools, sat in on these interviews.

Cash testified that Chumbler asked if there were any instances of abuse or "any sorts of physical situations." She further testified that she told Chumbler about Teckenbrock pulling K.C.'s hair, screaming in his face, and possibly spanking him. Flatt testified that Cash said she had once heard "swatting" when Teckenbrock and K.C. were in the changing room, but she was unsure who was doing the swatting. Cash also mentioned hair pulling but said K.C. pulled his own hair and Teckenbrock would have to pull his hands to get him to stop.

Parker testified that Chumbler asked her if she had ever seen Teckenbrock hit or spank K.C., and she said no.

After these interviews, Chumbler called Flatt and told him that he could not substantiate the allegations against Teckenbrock. Flatt informed Lovett of this finding.

On May 5, 2016, Flatt and Lovett met with several parents—T.C., Heather Lane, and Amber Harris—who had requested a meeting. The parents gave Lovett a list of their concerns, including abuse and neglect, and they also told him that Teckenbrock discussed T.C.'s personal

life in the classroom and called her a "monster." Lovett told the parents that the school would investigate the situation.

Lovett assigned Flatt and Marshall County's Elementary Supervisor, Abby Griffy, to conduct a second investigation. Lovett and Flatt interviewed Teckenbrock, Cash, and Hall.

In these interviews, Teckenbrock denied that she had engaged in any abusive actions towards K.C. Flatt testified that Cash's answers were "kind of wishy-washy" and "noncommittal." Cash simply reiterated what she had told Chumbler. Cash also stated that "nothing is being done to help these kids. They are just sat in a chair."

Cash testified that she could not remember the details of the interview by Flatt and Griffy. However, she also testified that the interview with Flatt was more about classroom operations and that she did not tell him about Teckenbrock's abuse of K.C.

Parker was absent, so Lovett and Flatt had to wait until the following week to interview her. Flatt testified that Parker stated in her interview that Teckenbrock made derogatory remarks about parents in the classroom and that the aides were not instructed about the students' needs.

Flatt testified that, based on these interviews, he could not conclude that Teckenbrock had engaged in any inappropriate touching.

Flatt and Griffey provided a report to Lovett on May 12 or 13, 2016. Shortly thereafter, Lovett received a call informing him that a complaint had been filed with the Department of Child Based Services ("DCBS") and that the agency would be conducting its own investigation.[2] The same day, Lovett removed Teckenbrock from the classroom setting.[3] Lovett testified that he did not get back to the parents with whom he had met due to learning of the DCBS investigation.

---

[2] K.C.'s father testified that he and his wife filed the complaint with the DCBS.

[3] Teckenbrock was assigned to work in the technology department at the Marshall County Board of Education where she does not work with children. No one informed K.C.'s parents of

DCBS interviewed Lovett, Gold, Teckenbrock, Flatt, Cash, Parker and Hall. Parker told the DCBS about Teckenbrock yelling at children.

Lovett testified that when he had not heard back from DCBS as they were preparing for the new school year, he called and "still didn't get a response." Then, in late July, DCBS officials met with Lovett and informed him of their findings. DCBS would not provide Lovett with the evidence it had compiled, but it did inform him that its investigation substantiated a finding of neglect but not abuse.

K.C.'s parents sent a letter dated August 10, 2016, withdrawing K.C. from the Marshall County School District for the 2016-17 school year. K.C.'s father testified that they did not consider reenrolling K.C. in the Marshall County School District but were looking into alternative private schooling.

K.C.'s parents filed suit in the Western District of Kentucky at Paducah on August 22, 2016, alleging claims under Title II of the ADA, 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. The Complaint sets forth the allegations of abuse against K.C. and, in a section titled "Deliberate Indifference," plaintiff alleges that "Marshall County engaged in a multi-level pattern of being deliberately indifferent to the unequal treatment of K.C. in comparison to non-disabled students who do not experience abuse." In paragraphs 21, 22, and 27, plaintiff also alleges that Marshall County had been deliberately indifferent.

Discovery ensued, and the Board filed its motion for summary judgment on October 27, 2017. The Board argued that the record did not support a finding that the Board had been deliberately indifferent to K.C.'s rights under the ADA and § 504.

---

her removal from the classroom. Teckenbrock remains in that position. Her appeal of that action is on hold pending the outcome of this suit.

On November 17, 2017, plaintiff filed his response in opposition to defendant's motion for summary judgment. Plaintiff cited language from *S.S. v. E. Ky. Univ.*, 532 F.3d 445 (6th Cir. 2008), suggesting that this court might in the future consider alternatives to the deliberate indifference standard in cases involving peer-on-peer harassment. Plaintiff did not elaborate; instead he discussed Sixth Circuit law on deliberate indifference in the Title II ADA and § 504 contexts, arguing that the record raised a triable issue of fact under that test. For instance, although plaintiff cited an EEOC Enforcement Guidance titled "Vicarious Employer Liability for Unlawful Harassment by Supervisors," he offered the document in support of his argument that the Board's lack of communication was one factor supporting a finding of deliberate indifference. Plaintiff's opposition brief contains no other reference to vicarious liability. In reply, the Board reiterated its arguments on the deliberate indifference analysis.

The district court issued its Memorandum Opinion on January 30, 2018. The court acknowledged plaintiff's observation that the *S.S.* case involved peer-on-peer harassment rather than teacher-on-student harassment, but it noted that "Plaintiffs do not offer an alternate standard upon which it believes the Court should instead rely." Several paragraphs later, the court again stated that "though Plaintiffs emphasize this difference, they do not offer an alternate standard."

The district court thus applied the deliberate indifference test and concluded that plaintiff had failed to raise a triable issue of fact on his claims.

Plaintiff timely appealed this ruling on February 19, 2018.

II.

We review a district court's grant of summary judgment *de novo*. *Hanrahan v. Mohr*, 905 F.3d 947, 953 (6th Cir. 2018) (citing *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017)). Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "The moving party bears the burden of showing that no genuine issue of material fact exists, . . . while the nonmoving party must set forth specific facts showing that there is a genuine issue for trial." *Hanrahan*, 905 F.3d at 953–54 (internal quotation marks and citations omitted). "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Harris v. Klare*, 902 F.3d 630, 634–35 (6th Cir. 2018) (internal quotation marks and citation omitted).

## A. <u>Whether Plaintiff Raised His Vicarious Liability Argument Below</u>

Plaintiff argues on appeal that the district court should have applied a vicarious liability instead of deliberate indifference standard to his claims. Because plaintiff raises this argument for the first time on appeal, and no exceptional circumstances exist to explain why he waited until now to do so, we decline to consider the argument.

It is well established in this Circuit that "issues raised for the first time on appeal are not properly before this Court." *Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 272 n.2 (6th Cir. 2018) (internal quotation marks and citation omitted). While this rule is prudential rather than jurisdictional, the Court will exercise its discretion to rule on an issue not raised below only in "exceptional circumstances." *St. Marys Foundry, Inc. v. Emp'rs Ins. of Wausau*, 332 F.3d 989, 996 (6th Cir. 2003) (quoting *Estate of Quirk v. Comm'r*, 928 F.2d 751–57 (6th Cir. 1991)). Where a plaintiff had an opportunity to raise an issue below but simply failed to do so, exceptional circumstances do not exist. *Id.*

It is clear that plaintiff had the opportunity to argue in the district court that a vicarious liability standard should apply to his claims. At the time of briefing below, at least two district courts had held that plaintiffs could avail themselves of a vicarious liability standard in pursuing

teacher-on-student disability discrimination and harassment claims under Title II of the ADA and § 504 of the Rehabilitation Act. *See Fortin v. Hollis Sch. Dist.*, Civil No. 15-cv-179-JL, 2017 WL 4157065, at \*5–6 (D.N.H. Sept. 9, 2017); *K.T. v. Pittsburg Unified Sch. Dist.*, 219 F. Supp. 3d 970, 981 (N.D. Ca. 2016).[4]

Plaintiff attempts to side-step this problem by asserting that he is presenting a pure question of law which the panel may consider. The case on which he relies, however, is inapposite. *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 984 (6th Cir. 2000), holds only that this court may consider a pure question of law that appellants fail to raise *on appeal*—not that the court may entertain an issue not raised in the district court.

Further, plaintiff's single reference in his summary judgment opposition brief to an EEOC guidance in which "vicarious liability" is found in the title does not squarely present to the district court the argument that a vicarious liability standard should supplant the deliberate indifference test. To the contrary, plaintiff expressly invoked the deliberate indifference standard in his complaint and argued it throughout his opposition memorandum. Neither defendant nor the district court was on notice that this alternative standard was being invoked, and plaintiff's attempt to propound this argument for the first time on appeal thus directly implicates the concerns about the integrity of the trial/appellate structure that underlie the prudential rule discussed above. *See St. Marys Foundry, Inc.*, 332 F.3d at 996.

For these reasons, we conclude that plaintiff did not raise his vicarious liability argument before the district court and the issue is not properly before this court.

---

[4] Plaintiff does not cite these cases in arguing for application of the vicarious liability standard on appeal.

**B. The District Court Correctly Found No Triable Issue of Fact**

Plaintiff also argues that if deliberate indifference does apply, then the district court erred in finding that he raised no triable issue under that standard.

However, a de novo review of the record demonstrates that the district court correctly concluded that plaintiff failed to raise a genuine dispute of material fact on the issue of deliberate indifference.

It is undisputed that the Board had no notice of any alleged abuse of K.C. by Teckenbrock prior to May 1, 2016, when plaintiff's parents reported the alleged abuse to the Marshall County Sheriff's Office. Under the above authorities, the Board cannot be liable for deliberate indifference for acts about which it had no knowledge. Plaintiff does not allege, for example, that the Board had knowledge of other complaints about Teckenbrock that would have given it knowledge that she posed a risk of abuse to K.C. or other children. *See, e.g., Grabow v. Cty. of Macomb*, 580 F. App'x 300, 311 (6th Cir. 2014) (finding plaintiff could not satisfy deliberate indifference standard without evidence of defendant's "necessary subjective knowledge" of a known risk); *Lopez v. Metro. Gov't of Nashville & Davidson Cty.*, 646 F. Supp. 2d 891, 916 (M.D. Tenn. 2009) (denying summary judgment on Title IX sex abuse claim because a reasonable jury could find that school district had knowledge of abuser's proclivities).

Plaintiff argues that the Board failed to adequately train the classroom aides regarding the procedures and duties for reporting abuse in the classroom, and that such failure can give rise to liability. The bulk of this argument, however, is made in the context of the vicarious liability analysis which, as noted above, is not before this court. Further, the case cited by plaintiff in support of this argument, *Doe v. Forest Hills Sch. Dist.*, No. 1:13-cv-428, 2015 WL 9906260

(W.D. Mich. Mar. 3, 2015), relied on alleged insufficient training to deny summary judgment on a § 1983 claim, not an ADA or § 504 claim. *Id.* at *16–18.

Plaintiff has cited no authority that would allow an alleged lack of training of school personnel to support a legal finding of deliberate indifference where the school district had no knowledge of the alleged discrimination, and to do so would circumvent the actual knowledge requirement discussed above.

It is further undisputed that K.C.'s last day of school at Marshall Elementary was April 29, 2016. Thus, the post-complaint faults that plaintiff alleges in the Board's handling of his complaint—shoddy interviews, lack of communication, etc.—cannot constitute deliberate indifference because, even assuming those actions were deficient, they did not cause K.C. to suffer any further abuse. *See Lopez*, 646 F. Supp. 2d at 917–18 (noting that deliberate indifference after report of discrimination must cause the student to endure additional discrimination).

While plaintiff makes the superficially appealing argument that the Board's failure to communicate caused K.C. to lose educational opportunities, his father's testimony was quite adamant that he and his wife—who sent a letter on August 10, 2016 withdrawing K.C. for the 2016-2017 school year—had no intention of returning K.C. to Marshall County schools and that they had been exploring alternative private schooling. No reasonable jury could conclude, therefore, that the alleged inadequacy of the Board's response to the complaint of abuse caused K.C. to lose educational opportunities.

Plaintiff also argues that he has a viable claim for a hostile environment based on his disability. However, even assuming such a claim is cognizable under Title II of the ADA or § 504, plaintiff never raised this argument before the district court. For the reasons already discussed, therefore, this argument is not properly before this court.

Finally, absent a viable claim, plaintiff cannot be entitled to injunctive relief

### III.

Plaintiff did not present his vicarious liability argument to the district court, and it is thus not properly before this Court. Further, the district court correctly determined that plaintiff raised no triable issue pursuant to a deliberate indifference standard.

For the aforementioned reasons, we **AFFIRM**.

DONALD, Circuit Judge, concurring. I join the opinion in its entirety, but write separately to comment on the disturbing facts of this case. While the legal standard has not been satisfied, Teckenbrock's actions are nonetheless concerning.